**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

SEAN PAUL BOLIVAR,
*Defendant-Appellant.*

No. 11-30055

D.C. No.
1:10-cr-00110-
BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
January 11, 2012—Seattle, Washington

Filed February 29, 2012

Before: A. Wallace Tashima, Susan P. Graber, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Graber

## COUNSEL

Mark J. Ackley, Federal Defender Services of Idaho, Boise, Idaho, for the defendant-appellant.

Christian S. Nafzger, Assistant United States Attorney, Boise, Idaho, for the plaintiff-appellee.

## OPINION

GRABER, Circuit Judge:

Defendant Sean Paul Bolivar appeals the district court's denial of his motion to suppress evidence obtained during a probation search. Following our holding in *United States v. Davis*, 932 F.2d 752, 758 (9th Cir. 1991), the district court held that, to support the search, the officers needed only a "reasonable suspicion" to conclude that the probationer owned, controlled, or possessed an item within the probation-

er's residence. Defendant contends that the greater standard of "probable cause" applies in these circumstances. Because our holding in *Davis* has not been overruled and is not clearly irreconcilable with any intervening case law, *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc), we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Defendant resided in a one-bedroom apartment with Philine Black. At the relevant time, Black was a probationer. As a condition of probation, she had consented to a search of her property by probation officers and police officers.

On March 18, 2010, police officers arrived at the apartment with a probation-violation warrant for Black's arrest. Black let the officers into the apartment. Defendant was not present.

The police officers arrested Black and conducted a search of the apartment. Along the bedroom wall were two closet doors, about three or four feet apart. The doors led to a single closet. The district court found that "[t]he interior closet space was not divided, but there was a distinct break or space between clothing hanging on the right side and clothing hanging on the left side." "[U]pon opening the right closet door, [a police officer] encountered only men's clothes." The officers retrieved a purple backpack that was "hanging from a hanger in the middle of the closet." "The backpack was zippered shut with no protrusions." The officers opened the backpack and discovered a ".12 gauge sawed-off shotgun with a ten-inch barrel." They questioned Black, who said that the backpack belonged to Defendant.

The government indicted Defendant on several counts, including one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Defendant moved to suppress the evidence of the firearm on the ground that the

police officers had violated his Fourth Amendment right to be free from unreasonable searches.

The government argued that the warrantless search of the backpack was justified by Black's consent, through the terms of her probation, to a search of her property. Defendant argued that the search of the closed backpack fell outside the scope of that consent, because the police lacked probable cause to believe that the backpack belonged to Black, the probationer.

After a hearing, the district court denied the motion to suppress the firearm. The court held that the applicable legal standard was "reasonable suspicion," not the higher level of "probable cause." The court then held that "[t]he totality of the circumstances show that [the police officer] had a reasonable suspicion that the backpack was controlled by Black or jointly controlled by Black and [Defendant]," primarily because "the backpack was found in the middle of the interior of the undivided closet, indicating that it could have been placed there by Black, and also indicating it might be jointly controlled by Black and [Defendant]."

Defendant then entered into a conditional plea agreement, which the district court accepted. Defendant pleaded guilty to unlawful possession of a firearm by a felon and waived most of his constitutional rights. But he retained the right to appeal the district court's denial of his motion to suppress.

## DISCUSSION[1]

Defendant does not challenge the search of *the apartment*. Under applicable law and the terms of Black's probation, the police permissibly searched the apartment and Black's possessions. *See generally United States v. Knights*, 534 U.S. 112

---

[1]We review de novo the district court's denial of a motion to suppress. *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010).

(2001) (discussing warrantless searches of probationers' residences). Instead, Defendant challenges the search of *the backpack*. He argues that, even though the officers validly searched the apartment, the officers lacked probable cause to believe that the backpack, which they encountered by opening a closet door to a space containing men's clothes, belonged to Black.

On appeal, Defendant argues only that the district court applied the wrong legal standard. He does not challenge the district court's determination—with which we agree—that, viewing the totality of the circumstances, the officers had a reasonable suspicion that Black exercised control over the backpack.

**[1]** We previously have held that the applicable legal standard is "reasonable suspicion." *Davis*, 932 F.2d at 758. In *Davis*, as here, police officers searched a probationer's residence pursuant to a term of probation permitting warrantless searches, but another person also had joint control over the premises. *Id.* at 755, 757. The officers in *Davis* searched a safe inside the residence under circumstances that, like the circumstances concerning the backpack here, arguably suggested that the safe belonged to the non-probationer rather than the probationer. *Id.* at 759. After analyzing the proper legal standard to apply in these circumstances, we held "that police must have reasonable suspicion[ ] that an item to be searched is owned, controlled, or possessed by probationer, in order for the item to fall within the permissible bounds of a probation search." *Id.* at 758.

**[2]** Because *Davis* is directly on point, it is controlling unless it has been overruled or is clearly irreconcilable with intervening case law. *Miller*, 335 F.3d at 899-900. Defendant does not argue that a Supreme Court precedent has overruled or eviscerated *Davis*, and we have not found a relevant case that does so. Instead, Defendant contends that *Davis* effec-

tively was overruled by our en banc decision in *Motley v. Parks*, 432 F.3d 1072, 1087 (9th Cir. 2005) (en banc).

In *Motley*, police officers conducted warrantless, suspicion-less searches of certain parolees' residences,[2] as part of an effort to "clean up" the neighborhood. *Id.* at 1076. Motley, a non-parolee whose residence was searched, brought a § 1983 suit against the police officers (and others) for their actions during the search of Motley's residence. *Id.* at 1075-77. Motley asserted, among other claims, an "illegal search claim." *Id.* at 1078. She argued (1) that the officers lacked sufficient evidence that the parolee lived with her and (2) that it was clearly established that the officers needed some level of suspicion (which they allegedly lacked) to search the residence.

[3] Concerning the first issue, we held that the officers needed "probable cause," and not some lesser degree of certainty, that the parolee resided at the address in question. *Id.* at 1078. After discussing many of our previous cases, we concluded:

> These cases make clear that a search conducted without consent or a search warrant is permissible only when the officers have some heightened knowledge that they are at the address where either the parolee or the subject of an arrest warrant resides. The underlying analysis fits equally well here. A reasonable parole search conducted by law enforcement officers without a warrant does not run afoul of the Fourth Amendment. *See Griffin v. Wisconsin*, 483 U.S. 868, 872-75 (1987). Generally, a condition of parole that permits warrantless searches provides

---

[2]Although the distinction between parolees and probationers may have relevance in other, related contexts, *United States v. Baker*, 658 F.3d 1050, 1058-60 (9th Cir. 2011) (Graber, J., concurring), we agree with the parties that any potential distinction has no relevance to the precise legal issue here—whether *Motley* overruled *Davis*.

officers with the limited authority to enter and search
a house where the parolee resides, even if others also
reside there. But they have to be reasonably sure that
they are at the *right* house. Nothing in the law justi-
fies the entry into and search of a third person's
house to search for the parolee. "The Fourth Amend-
ment's protection against unreasonable searches in a
person's home is not diminished by the mere pres-
ence of a guest in the home." *Perez [v. Simmons]*,
884 F.2d [1136,] 1141 [(9th Cir. 1989)]. In other
words, the parole condition indicates only the paro-
lee's acquiescence to a warrantless search of his own
residence. Absent this provision and the existence of
exigent circumstances, officers must obtain consent
or a warrant to enter a house.

*Motley*, 432 F.3d at 1079 (parallel citations omitted). Turning
to the arguably conflicting standards espoused by this court's
previous cases on the precise level of "heightened knowl-
edge" needed by the police officers, we held:

Recently, we attempted to reconcile our previous
holdings. Following analysis of federal precedent,
we concluded that when it came to whether a person
lives at a particular residence, the "reason to believe"
or "reasonable belief" standard "should be read to
entail the same protection and reasonableness inher-
ent in probable cause." *United States v. Gorman*, 314
F.3d 1105, 1111-15 (9th Cir. 2002). We see no rea-
son to depart from that conclusion here. . . .

Requiring officers to have probable cause to
believe that a parolee resides at a particular address
prior to conducting a parole search protects the inter-
est of third parties. Law enforcement officers are
allowed to search a parolee's residence, but they
must have probable cause to believe that they are *at*
the parolee's residence. In sum, we hold that before

conducting a warrantless search pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched.

*Motley*, 432 F.3d at 1080 (some citations omitted).

**[4]** Notably, we did not mention our earlier decision in *Davis*. The reason seems clear: *Motley*'s first issue concerned the level of certainty required for officers to decide that they are entering the right *home*, whereas *Davis* concerned the separate, downstream issue of the level of certainty that the parolee owns, possesses, or controls a particular *item* within the home. Our discussion of the first issue in *Motley* is therefore perfectly consistent with our holding in *Davis*: Officers must have "probable cause" that they are at the correct residence but, once validly inside, they need only "reasonable suspicion" that an item is owned, possessed, or controlled by the parolee or probationer. The higher level of certainty concerning the home itself is consistent with longstanding and recent Supreme Court precedent. *See, e.g.*, *Kyllo v. United States*, 533 U.S. 27, 33 (2001) ("'[A] private home[ ] [is] where privacy expectations are most heightened.'" (quoting *Dow Chem. Co. v. United States*, 476 U.S. 227, 237 n.4 (1986))). Entry into a residence is entry into the most constitutionally protected space, *Kyllo*, 533 U.S. at 33, so the *Motley* rule for the home does not *necessarily* translate into the rule for a closed container within the home.

But our discussion in *Motley* did not end there. We went on to consider a second issue: whether it was clearly established that the officers needed some level of suspicion to conduct the warrantless search.[3] *Motley*, 432 F.3d at 1083-88. On that

---

[3]At the time we decided *Motley*, it generally was not permissible for a court to skip to the "clearly established" prong and avoid the constitutional question. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). But we held that, in

issue, we held that, because the state of the law at the time of the search "was in 'disarray,' " the officers did not violate clearly established law. *Id.* at 1083. After an extended analysis supporting that conclusion, we mentioned our previous *Davis* decision for the sole purpose of demonstrating that "the *Davis* holding has little to do with our requiring a particularized suspicion of wrong-doing," the issue at hand in *Motley*:

> Motley cites two other cases to support her argument that we have "long required officers to have reasonable suspicion linking the parolee to some wrongdoing," but neither comes close to meeting the "clearly established" threshold. In *United States v. Davis*, 932 F.2d 752, 758 (9th Cir. 1991), we noted that "[t]he permissible bounds of a probation search are governed by a reasonable suspicion standard." The question before us, though, was whether a safe inside the probationer's residence was a reasonable extension of the search condition in his probation agreement. We ultimately held that the "police must have reasonable suspicion, that an item to be searched is owned, controlled, or possessed by probationer, in order for the item to fall within the permissible bounds of a probation search." *Id.* Thus, viewed in its proper context, the *Davis* holding has little to do with our requiring a particularized suspicion of wrong-doing. It merely reflects our requirement—set forth earlier in this opinion—that officers have probable cause to believe that what they intend to search actually belongs, or is connected, to the parolee.

the "unusual" circumstances of the case, the court validly could skip to the "clearly established" prong. *See Motley*, 432 F.3d at 1077-78 (explaining that, because the Supreme Court had granted certiorari in a case raising the same underlying constitutional question, this court could "bypass" the constitutional question).

*Motley*, 432 F.3d at 1087 (alteration in original).

**[5]** Defendant seizes on the final sentence of our discussion and asserts that, because of its peculiar phrasing, we necessarily overruled *Davis*' holding that "reasonable suspicion" is the proper legal standard and replaced it with the "probable cause" standard. We disagree. *Motley*'s discussion of *Davis* was in the context of an altogether different legal question—whether it was clearly established that the police need suspicion of wrongdoing. We discussed *Davis* only to point out that *Davis* was not relevant to that legal issue. *Motley* simply did not decide the issue here: the level of certainty that officers must have before searching a closed object inside a residence, once officers lawfully have entered the residence to conduct a search. *Motley* discussed *Davis* for the sole purpose of casting it aside as irrelevant. Accordingly, *Motley* did not overrule *Davis*, explicitly or implicitly. Its principle remains sound: Once police officers properly enter a residence pursuant to a probation search, they need only a "reasonable suspicion" to conclude that the probationer owns, controls, or possesses a particular item within the probationer's residence in order to search that item.

**AFFIRMED.**