**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 3 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50408 |
| Plaintiff-Appellee, | D.C. No. 3:15-cr-02585-W-1 |
| v. | |
| PEDRO AURELIO FRANCO, AKA Pedro Franco, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Argued and Submitted March 9, 2018
Pasadena, California

Before: GOULD and MURGUIA, Circuit Judges, and ZOUHARY,** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

Pedro Aurelio Franco (Pedro)[1] was convicted of two counts of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g), pursuant to a conditional guilty plea. In his present appeal, Pedro challenges the district court's denial of his motion to suppress two firearms that officers seized from a safe in a locked closet in his locked bedroom, arguing that the search violated his Fourth Amendment rights.

"We review the lawfulness of a search and seizure—a mixed question of law and fact—de novo." *United States v. Scott*, 705 F.3d 410, 414–15 (9th Cir. 2012) (citing *United States v. Mendoza–Ortiz,* 262 F.3d 882, 885 (9th Cir. 2001)). We review the district court's underlying findings of fact for clear error. *Id.*

1. Pedro contends that his brother's, Claudio Franco's, probation release condition that allowed officers to search Claudio's person, property, and place of residence without reasonable cause, is invalid under the Fourth Amendment, and therefore, the entire search of the shared Franco home was unconstitutional. We need not reach this issue. Our inquiry is focused on the reasonableness of the search of Pedro's bedroom based on the totality of the circumstances, including Pedro's reasonable expectation of privacy and the state's interests. *See United States v. Lara*, 815 F.3d 605, 610–12 (9th Cir. 2016) (evaluating the

---

[1] Because this case involves various members of the Franco family, all living in the same home, the disposition refers to the family members by first name.

reasonableness of a probation search condition based on the balance of the intrusion upon an individual's privacy and the degree to which the search is needed for the promotion of legitimate state interests); *see also United States v. Knights*, 534 U.S. 112, 117–18 (2001) (evaluating the reasonableness of the search condition in light of the totality of the circumstances, including the probationer's acceptance of the search condition). As discussed below, we conclude the search of Pedro's bedroom was not reasonable under the Fourth Amendment.

2. Pedro argues that the search of his locked bedroom and closet cannot be justified as permissible under the scope of Claudio's probation search condition. In a search of a residence that is shared by an individual on probation and an individual not on probation, a valid probation search condition "authorizes the police to search common areas of th[e shared] home, even if doing so intrudes on the privacy rights of co-residents who did not themselves consent to the search." *Sharp v. Cty. of Orange*, 871 F.3d 901, 918 n.10 (9th Cir. 2017) (citing *United States v. Matlock*, 415 U.S. 164, 170–71 (1974)). As to a particular area or item that is not clearly a common space, officers must have a reasonable suspicion that the area or item is owned, possessed or within the control of the probationer, in order for it to fall within the permissible bounds of a probation search. *United States v. Davis*, 932 F.2d 752, 758–59 (9th Cir. 1991) (upholding officers' search of a locked safe in which officers found heroin that served as the basis for non-

probationer defendant's conviction where the safe was located in probationer's bedroom in an apartment to which both the defendant and the probationer had access); *see also United States v. Bolivar*, 670 F.3d 1091, 1093 (9th Cir. 2012) (upholding officers' search of a backpack found in a shared closet in a residence shared by a probationer and the non-probationer defendant).

Here, the officers could not have had reasonable suspicion that Pedro's locked bedroom was an area owned, possessed, or within the control of Claudio, the probationer. *See Davis*, 932 F.2d at 758. It is undisputed that the officers knew they were searching Pedro's private bedroom, which was not shared with Claudio. Pedro's bedroom was locked and only Pedro had the key to the room. These facts support that Claudio certainly did not own, and moreover, did not have control over Pedro's bedroom or its contents. The facts of this case are in contrast to *Davis* and *Bolivar* where the area searched was a shared space, and the probationer had possible access to and control over the items at issue. Here the officers could not have had reasonable suspicion that Pedro's locked bedroom was controlled or possessed by Claudio. *See id*. Therefore, Claudio's probation search condition did not extend to Pedro's locked bedroom.

3. The government argues, and the district court found, that the search of Pedro's locked bedroom was justified as part of a protective sweep that was necessary to identify any unknown threats to officer safety. Pedro contends that the

4

search of his bedroom went beyond the brief and cursory search that is permitted under the protective sweep doctrine.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). A protective sweep is permitted if the searching officer "possesse[d] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]' the officer in believing . . . that the area swept harbored an individual posing a danger to the officer or others." *Id*. (citation omitted) (alterations in original). "This 'protective sweep' is not a license to search every nook and cranny of a house, but is subject to two significant limitations: it 'extend[s] only to a cursory inspection of those spaces where a person may be found' and lasts 'no longer than it takes to complete the arrest and depart the premises.'" *United States v. Lemus*, 582 F.3d 958, 962 (9th Cir. 2009) (quoting *Buie*, 494 U.S. at 335–36).

For purposes of this disposition, we assume that a protective sweep can be conducted absent arrest.[2] We conclude that here, the search of Pedro's bedroom

---

[2] The officers here were conducting a probation search pursuant to Claudio's probation terms and had made no arrest prior to searching Pedro's bedroom and closet. We have recently "note[d] that there is both a split between the circuits and

5

was overly broad and did not constitute a protective sweep. Approximately thirteen minutes had elapsed from the time the officers initially arrived at the Franco home. The officers had "cleared" or made sure all other areas of the home were safe in that time, prior to asking Pedro for the key to his bedroom. Under these circumstances, the officers' search of Pedro's locked bedroom and closet is beyond a "quick and limited search of premises" that is "narrowly confined to a cursory visual inspection." *Buie*, 494 U.S. at 327.

The search of Pedro's bedroom and closet also does not comport with the rationales for a protective sweep—ensuring officers' safety and "dispel[ling] the *reasonable* suspicion of danger." *Id*. at 334–36 (emphasis added). Here, there were ten to twelve officers on scene to conduct the search of the Franco home. Although the lead officer, Officer Rodelo, believed the Franco brothers had prior criminal convictions and gang affiliation, the only individuals Officer Rodelo believed to be dangerous—Pedro and his other brother Jose—were detained in the front of the home where the officers first encountered them. Pedro and his parents told the officers that Claudio was not home, but Officer Rodelo testified that he did not

---

a split within our circuit as to whether a protective sweep may be done 'where officers possess a reasonable suspicion that their safety is at risk, even in the absence of an arrest.'" *Mendez v. Cty. of Los Angeles*, 815 F.3d 1178, 1191 (9th Cir. 2016), *cert. granted in part sub nom. Los Angeles Cty., Cal. v. Mendez*, 137 S. Ct. 547 (2016), *and vacated and remanded sub nom. Cty. of Los Angeles, Cal. v. Mendez*, 137 S. Ct. 1539 (2017) (collecting cases); *see also Sharp*, 871 F.3d at 919 n.11.

trust the family. However, Officer Rodelo stated he did not believe Claudio was dangerous, and Claudio was not on probation for a violent offense. Accordingly, there were no "specific and articulable facts" that would reasonably warrant the officers' belief that Claudio was dangerous and hidden in Pedro's bedroom, posing a threat to the officers. *See Buie*, 494 U.S. at 334. Moreover, if the officers were concerned about Claudio hiding in Pedro's bedroom and presenting a danger to them, during and after the thirteen minutes of their inspection of the Franco home, officers could have monitored the door without going into Pedro's bedroom and searching his closet.[3]

The search of Pedro's bedroom was overly broad and cannot be characterized as a brief and cursory protective sweep. The search was extended in time and was not rooted in specific and articulable facts supporting the belief that

---

[3] The government cites two Ninth Circuit cases for the proposition that the search here was valid under the protective sweep doctrine, specifically because of the danger the officers faced. *See United States v. Murphy*, 516 F.3d 1117, 1121 (9th Cir. 2008), *abrogated on other grounds by Fernandez v. California*, 571 U.S. 292 (2014) (upholding brief protective sweep of the "immediate area" of a storage unit that was owned by an individual for which there was an outstanding arrest warrant and who was unaccounted for at the time of the search, possibly presenting a hidden danger to officers); *United States v. Paopao*, 469 F.3d 760, 766–67 (9th Cir. 2006) (protective sweep was justified where the officers were investigating an illegal gambling room and had received a reliable tip that two perpetrators from previous robberies were in the room). Unlike *Murphy* and *Paopao*, this case does not involve a wanted fugitive or criminal-at-large. The only person missing from the home—Claudio—was not wanted. In fact, later that Friday, Claudio reported to jail as he was required to do on the weekends—a requirement of which Officer Rodelo was aware.

someone was in Pedro's bedroom and posed a danger to officers. *See id.*

4. Finally, the government argues that even if the search was unreasonable, the good faith doctrine supports the district court's decision to not suppress the evidence. The good faith doctrine applies when an officer, in good faith, reasonably relies on a search warrant that is later deemed to be invalid. *See United States v. Leon*, 468 U.S. 897, 919–21 (1984). That doctrine is inapposite here. There was no warrant to rely upon, and the officers' reliance on Claudio's probation condition to search Pedro's bedroom goes beyond the scope of that condition.

**REVERSED and REMANDED.**