**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

HOWARD DIXON,
*Defendant-Appellant.*

No. 19-10112

D.C. No.
3:18-cr-00319-CRB-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted March 2, 2020
San Francisco, California

Filed December 31, 2020

Before: Eugene E. Siler,[*] Kim McLane Wardlaw, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Wardlaw

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel vacated the district court's denial of a motion to suppress evidence resulting from a vehicle search conducted pursuant to a supervised release condition; conditionally vacated a conviction and sentence for possession of controlled substances; and remanded for an evidentiary hearing and (if the conviction is reinstated) for resentencing.

Applying the Supreme Court's analysis in *United States v. Jones*, 565 U.S. 400 (2012, which reminded that the Fourth Amendment protects not only reasonable expectations of privacy but also against physical intrusions by law enforcement onto property, the panel held that a Fourth Amendment search occurs when an officer physically inserts a key into the lock of a vehicle for the purpose of obtaining information, as occurred in this case when an officer inserted the key specifically to learn whether the defendant exercised control over the vehicle. The panel wrote that this court's contrary decision in *United States v. $109,179 in U.S. Currency*, 228 F.3d 1080 (9th Cir. 2000), is clearly irreconcilable with the Supreme Court's property-based Fourth Amendment jurisprudence in *Jones* and *Florida v. Jardines*, 569 U.S. 1 (2013).

Having concluded that the officer conducted a Fourth Amendment search, the panel turned to the reasonableness

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the search. The panel held that before conducting a warrantless search of a vehicle pursuant to a supervised release condition, law enforcement must have probable cause to believe that the supervisee owns or controls the vehicle. The panel observed that on the record before it, it is unclear whether the officer had probable cause to believe that the particular vehicle into which he inserted the key was owned or controlled by the defendant. The panel therefore remanded the case for the district court to conduct an evidentiary hearing and to rule on the defendant's suppression motion in light of the *Jones* and *Jardines* principles.

The panel held that the district court, at sentencing, erred in finding that the defendant, who was convicted of a lesser included offense of simple possession of controlled substances, was categorically ineligible for an acceptance-of-responsibility reduction on the ground that the defendant did not accept responsibility for the greater offense of possession with intent to distribute. The panel explained that U.S.S.G. § 3E1.1(a) does not require that the defendant admit to all the charged offenses. The panel therefore instructed that in the event the district court upholds the search on remand and reinstates the defendant's conviction, the district court should make a factual finding regarding acceptance of responsibility in the first instance.

## COUNSEL

Jonathan Abel (argued), Juliana C. DeVries, and Elizabeth M. Falk, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, San Francisco, California; for Defendant-Appellant.

Sloan Heffron (argued), Assistant United States Attorney; Merry Jean Chan, Chief, Appellate Section, Criminal Division; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

## OPINION

WARDLAW, Circuit Judge:

Howard Dixon appeals the district court's partial denial of his motion to suppress evidence resulting from a search of his vehicle. We must decide whether the insertion of a car key into a lock on the vehicle's door for the sole purpose of aiding the police in ascertaining its ownership or control is a "search" within the meaning of the Fourth Amendment. We have previously held that it was not, applying the "reasonable expectation of privacy" test from *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). *See United States v. $109,179 in U.S. Currency*, 228 F.3d 1080, 1087–88 (9th Cir. 2000). In light of recent Supreme Court authority tying the Fourth Amendment's reach to the law of trespass, however, we must conclude that because "[t]he Government physically occupied private property for the purpose of obtaining information," *United States v. Jones*, 565 U.S. 400, 404 (2012), it conducted a search within the meaning of the Fourth Amendment.

## I.

### A.

In January 2018, San Francisco Police Department ("SFPD") Officer Eduard Ochoa began surveilling Dixon, a felon serving a term of supervised release and subject to a

warrantless, suspicionless search condition. Dixon was a suspect in a shooting that occurred earlier that month in the Bayview District of San Francisco. Based on his observations, Officer Ochoa came to believe that Dixon lived at the Oakdale Apartments in Bayview. Officer Ochoa also noticed Dixon driving in the surrounding neighborhood during the daytime—twice in a black BMW and twice in a blue Honda minivan. He saw Dixon park the black BMW in the Oakdale Apartments' parking lot five times, and park the blue Honda minivan in that lot two times.

On March 9, 2018, Officer Ochoa learned that Dixon was under federal supervision and subject to the suspicionless search condition. Although Dixon had reported the Oakdale Apartments as his residence to his probation officer, Officer Ochoa did not know this and did not ask the probation officer what address he had on file. Rather, Officer Ochoa searched other databases for Dixon's residence, which resulted in several different addresses but none that matched the Oakdale Apartments.

Officer Ochoa nonetheless returned to the apartment building to surveil the area with other SFPD officers. There, they saw Dixon exit the building, re-enter it, and then exit again holding two garbage bags. Officer Ochoa attests that he observed Dixon walk towards a blue Honda minivan in the parking lot, which Officer Ochoa recognized as the one he had previously seen Dixon driving.

Officer Ochoa instructed officers to detain Dixon, prompting Dixon to drop both garbage bags and a set of keys on the ground. Officer Ochoa used those keys to enter the apartment, where he discovered various illegal drugs and drug paraphernalia in a room identified as belonging to Dixon. Following the apartment search, officers transported Dixon to Bayview Station.

Shortly before Dixon was transported, Officer Ochoa began searching the blue Honda minivan, using one of the keys that Dixon had dropped to unlock the vehicle. Inside the trunk area, he discovered a black backpack containing a large bag of marijuana. At Bayview Station, a further search of Dixon recovered twenty-one baggies containing cocaine, heroin, and methamphetamine.

B.

Dixon was indicted for possession with intent to distribute heroin, cocaine, and methamphetamine. Dixon moved to suppress the evidence obtained from the apartment and vehicle searches as unconstitutional, and from the later stationhouse search as tainted by these previous searches. In support, Dixon submitted a declaration explaining his relationship to the apartment and the van. In response, the government submitted Officer Ochoa's declaration, which detailed his investigation of Dixon. In turn, Dixon submitted an additional declaration that disputed several of Officer Ochoa's statements, including that he had never sat in or owned a black BMW during the relevant time period and that he did not approach the blue Honda minivan while carrying the trash bags, but had continued walking past it before being stopped. Dixon also attested that there were two "sky blue" minivans parked side-by-side in front of the apartment complex on that day, a fact confirmed by an officer's body camera footage. Dixon claimed that, initially, the officers attempted to enter the other minivan before its owner "came running out" of the complex to stop them. Dixon also alleged that while detained, an officer repeatedly requested Dixon provide the keys for a black Audi that was also parked in the lot.

The district court ruled on the suppression motion without conducting an evidentiary hearing. The district

court granted the motion as to the search of the apartment, concluding that the officers did not have probable cause to believe Dixon was a resident of the apartment because Officer Ochoa's observations amounted to information suggesting only Dixon's presence, but not his residence, there.  As a result, the district court suppressed the evidence from the apartment search.

The district court upheld the search of the minivan, however, reasoning that under *United States v. $109,179 in U.S. Currency*, 228 F.3d 1080 (9th Cir. 2000), the insertion of the key into the minivan's lock was not itself a search, and that possession of a key that fit the minivan's lock amounted to probable cause to believe that Dixon exercised control of the minivan.  Because the minivan search was constitutional, the court held that this intervening lawful search, which produced a large bag of marijuana, attenuated any taint from the apartment search, and therefore declined to suppress the evidence found when police searched Dixon at the jail.

At trial, the district court excluded the marijuana found in the minivan because it was improperly mixed with the suppressed marijuana found in the apartment, leaving the drugs recovered at the jail as the only admissible evidence against Dixon.  The jury hung on the charge of possession with intent to distribute controlled substances, but convicted Dixon of the lesser-included offense of simple possession.  At sentencing, the district court denied Dixon a two-step guideline reduction for acceptance of responsibility, rejected an enhancement for obstruction of justice, and sentenced

Dixon to 21-months' imprisonment. This timely appeal followed.[1]

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review a ruling on a motion to suppress de novo, *United States v. Korte*, 918 F.3d 750, 753 (9th Cir. 2019), and findings of fact associated with that motion for clear error, *United States v. Grandberry*, 730 F.3d 968, 971 (9th Cir. 2013). "[W]e 'review de novo whether the district court misapprehended the law with respect to the acceptance of responsibility reduction.'" *United States v. Green*, 940 F.3d 1038, 1041 (9th Cir. 2019) (quoting *United States v. Cortes*, 299 F.3d 1030, 1037 (9th Cir. 2002)).

## III.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. But individuals "subject to a warrantless, suspicionless search condition have 'severely diminished expectations of privacy by virtue of their status alone.'" *United States v. Cervantes*, 859 F.3d 1175, 1182 (9th Cir. 2017) (quoting *Samson v. California*, 547 U.S. 843, 852 (2006)). Here, a condition of Dixon's supervised release mandated that he "submit to a search of his person, residence, office, vehicle, or any property under his control . . . at any time with or without suspicion."

---

[1] The government initially appealed the partial suppression order under 18 U.S.C. § 3731 but dismissed that appeal before briefing. *See* Order, *United States v. Dixon*, No. 18-10438, ECF No. 3 (9th Cir. Nov. 19, 2018) (granting voluntary dismissal of appeal).

But this authority is not limitless, and we have explained that to conduct a search of property pursuant to this condition, the individual subject to it must "exhibit[] a sufficiently strong connection to [the property in question] to demonstrate 'control' over it." *Korte*, 918 F.3d at 754 (quoting *Grandberry*, 730 F.3d at 980). In other words, before the police could search Dixon's blue Honda minivan without a warrant or probable cause, they had to have a sufficient basis to believe he owned or controlled that vehicle. In this case, the police crossed that knowledge threshold only when they inserted the key that Dixon had dropped into the car lock, thereby confirming that he exercised control over the minivan.

Therefore, we must determine whether inserting that key into the minivan's lock was itself permissible under the Fourth Amendment. This matters because if inserting the key into the car lock violated Dixon's Fourth Amendment rights, the officers' resulting knowledge and authority to search that vehicle would be tainted by a Fourth Amendment violation. Given that the district court had already ruled that the officers' search of Dixon's apartment violated the Fourth Amendment, the officers would have lacked justification for Dixon's arrest and subsequent stationhouse search. Thus, the trial court would have had to suppress the drugs found on Dixon's person, and the government would have been left with no admissible drug evidence at Dixon's trial.

To determine whether a Fourth Amendment violation occurred, we ask two primary questions: first, whether the government conduct amounted to a search within the meaning of the Fourth Amendment; and second, whether that search was reasonable.

A.

The district court relied on our decision in *Currency*, to hold that the insertion of the key into the minivan's lock was not a search within the meaning of the Fourth Amendment. It thus held that the officers could properly rely on their knowledge that the key fit the lock for probable cause that Dixon had control of the minivan, therefore making it subject to Dixon's warrantless search condition. But our decision in *Currency* rested solely on an owner's reasonable expectation of privacy in his vehicle and predated the Supreme Court's reminder that the Fourth Amendment protects not only reasonable expectations of privacy, but also against physical intrusions by law enforcement onto property. *See United States v. Jones*, 565 U.S. 400, 404–05 (2012). Applying *Jones*'s property-based analysis, we must conclude that a Fourth Amendment search occurs when an officer physically inserts a key into the lock of a vehicle for the purpose of obtaining information, as occurred here. Thus, our decision in *Currency* is "clearly irreconcilable" with the Supreme Court's property-based Fourth Amendment jurisprudence, and it cannot stand to the extent that it concluded that no search occurred on these facts. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) ("[W]here the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled.").

In *Currency*, a criminal forfeiture proceeding, a police officer obtained a set of car keys as the result of a lawful *Terry* stop of the claimant. 228 F.3d at 1083–87. To identify which car belonged to the claimant, the officer inserted the

keys into the locks of various cars in the parking lot until he discovered a match. *Id.* at 1083. Armed with that knowledge, the officer returned to the claimant and obtained his consent to search the car. *Id.* Applying the "reasonable expectation of privacy" test from *Katz*, we reasoned that the claimant "had a minimal expectation of privacy in the lock of his car door," and that the officer's conduct was minimally intrusive, consisting solely of the insertion of a key for the limited purpose of learning whether the car was under the claimant's control. *Id.* at 1087–88, 1087 n.44. We thus concluded that "inserting the key into the car door lock for the purpose of identifying [the claimant]" was not a Fourth Amendment search. *Id.* at 1088.

Our holding in *Currency*, however, is clearly irreconcilable with the Supreme Court's more recent holdings in *United States v. Jones*, 565 U.S. 400 (2012), and *Florida v. Jardines*, 569 U.S. 1 (2013). *See Miller*, 335 F.3d at 893. In the last decade, these cases have confirmed that a search occurs when the government "physically occup[ies] private property for the purpose of obtaining information." *Jones*, 565 U.S. at 404. Thus, "*Katz* did not narrow the Fourth Amendment's scope." *Id.* at 408. Rather, "the *Katz* reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test," and a search may therefore be prohibited under either test. *Id.* at 409 (emphasis omitted). This common-law protection extends to vehicles notwithstanding lesser expectations of privacy, because "[i]t is beyond dispute that a vehicle is an 'effect' as that term is used in the [Fourth] Amendment." *Id.* at 404; *see also id.* at 411.

Applying these principles, the Supreme Court in *Jones* held that officers could not physically intrude on a Jeep to plant a GPS tracking device. *Id.* at 406. Even if the

defendant had no reasonable expectation of privacy in the exterior of his car or its location, the physical intrusion of the vehicle was itself a search under the Fourth Amendment. *Id.* at 406–07. The Court expressly rejected the notion that the exterior of a car is entitled to less protection under this theory: "[b]y attaching the device to the Jeep, officers encroached on a protected area." *Id.* at 410. The Court reaffirmed the trespass-based theory underpinning the Fourth Amendment in *Jardines*, in which it held that officers could not invade the curtilage around a home to gather information without a warrant because they had no explicit or implicit license to physically intrude into that "constitutionally protected area." 569 U.S. at 7, 11. *Jardines* reiterated that the "*Katz* reasonable-expectations test . . . is unnecessary to consider when the government gains evidence by *physically intruding* on constitutionally protected areas." *Id.* at 11 (emphasis added).

The same principles apply here.[2] When Officer Ochoa inserted the key into the minivan's lock, an "effect," he physically intruded onto a constitutionally protected area. This physical intrusion was done for the express purpose of obtaining information, specifically to learn whether Dixon exercised control over the minivan. Thus, the insertion of

---

[2] The government argues that *Jones* and *Jardines* are inapplicable because these cases did not concern individuals subject to suspicionless search conditions. This observation is irrelevant to the first step of the Fourth Amendment analysis. We rely on these cases solely to determine whether a search occurred in the first place. Parole and supervised release status, on the other hand, is relevant only to the next step of the analysis—whether the search was reasonable. *See*, *e.g.*, *Cervantes*, 859 F.3d at 1183 ("A search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment.").

the key into the minivan's lock constituted a search within the meaning of the Fourth Amendment.

Our conclusion is in accord with that of our sister circuits, which, post-*Jones* and *Jardines*, have similarly concluded that such physical intrusion constitutes a search. *See*, *e.g.*, *United States v. Bain*, 874 F.3d 1, 15 (1st Cir. 2017) (holding that testing a key in an apartment door lock to see if it fit constituted a search under *Jardines*); *cf. Taylor v. City of Saginaw*, 922 F.3d 328, 333 (6th Cir. 2019) (finding city's chalking of tires to determine how long a vehicle had been parked in the same location constituted a search under *Jones*); *United States v. Richmond*, 915 F.3d 352, 357 (5th Cir. 2019) (holding that officer pushing his finger against the defendant's tire to learn what was inside constituted a search under *Jones*); *see also Schmidt v. Stassi*, 250 F. Supp. 3d 99, 101 (E.D. La. 2017) (holding that an officer's collection of DNA from the defendant's car door while it was parked was a search under *Jones*).

## B.

Having concluded that Officer Ochoa conducted a Fourth Amendment search, we turn to the reasonableness of the search. We have recognized that "[a] search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment." *Cervantes*, 859 F.3d at 1183 (citing *Samson*, 547 U.S. at 852–54).[3] It is undisputed that by the terms of

---

[3] We see no reason to differentiate between a parolee and an individual on federal supervised release in this context—both are subject to "warrantless, suspicionless search condition[s] [and] have 'severely diminished expectations of privacy by virtue of their status alone.'" *Cervantes*, 859 F.3d at 1182 (quoting *Samson*, 547 U.S. at 852); *see also See United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) ("There is

his federal supervised release, Dixon was subject to a warrantless, suspicionless search of his "vehicle, or any other property under his control." But before this condition authorizes a warrantless search, officers must have a sufficient "degree of knowledge" that the search condition applies to the place or object to be searched. *Grandberry*, 730 F.3d at 974; *see also Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005) (en banc) ("[A] condition of parole that permits warrantless searches provides officers with the limited authority to enter and search a house where the parolee resides, even if others also reside there. But they have to be reasonably sure that they are at the *right* house."), *overruled in part on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc) (per curiam). In other words, this "degree of knowledge" is a "*precondition* for a search pursuant to a parole condition." *Grandberry*, 730 F.3d at 975.

The level of suspicion required to determine whether a vehicle is subject to a warrantless search condition appears to be an issue of first impression in this circuit, although we have squarely addressed the issue in two related contexts. First, to search a residence "pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched." *Id.* at 973 (quoting *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006)); *see also Motley*, 432 F.3d at 1080. And second, we have held that "once

no sound reason for distinguishing parole from supervised release with respect to [a supervised release search] condition."); *Doe v. Harris*, 772 F.3d 563, 571 (9th Cir. 2014) ("Parole (or supervised release, in the federal system) is one step removed from imprisonment."). We have also previously declined to differentiate between parolees and probationers under similar circumstances. *See United States v. Bolivar*, 670 F.3d 1091, 1094 n.2 (9th Cir. 2012).

validly inside [a residence], [officers] need only 'reasonable suspicion' that an item is owned, possessed, or controlled by the parolee or probationer." *Bolivar*, 670 F.3d at 1095 (citing *United States v. Davis*, 932 F.2d 752, 757–58 (9th Cir. 1991)). We have thus yet to address the degree of knowledge that police must have to establish that an object *outside* of a parolee's residence is subject to the parolee's warrantless search condition.[4]

We hold that before conducting a warrantless search of a vehicle pursuant to a supervised release condition, law enforcement must have probable cause to believe that the supervisee owns or controls the vehicle to be searched. Our *en banc* decision in *Motley* is instructive. There, we first adopted the rule that before conducting a warrantless search pursuant to a parolee's parole condition, "officers must have probable cause to believe that the parolee is a resident of the house to be searched." *Motley*, 432 F.3d at 1080. We emphasized that this requirement "protects the interest of third parties"—a consideration that carried through our related precedents. *Id.* For example, we explained that

---

[4] Our recent decision in *Korte* is not instructive on this point because neither ownership nor control was at issue. *See Korte*, 918 F.3d at 754. There, the parolee "admit[ted] that he rented the car and referred to [the vehicle] as 'my car.'" *Id.* We also reject the government's argument that we have already answered this question in *Davis* and *Bolivar*. For support, it takes out-of-context our statement from *Davis* "that police must have reasonable suspicion, that an item to be searched is owned, controlled, or possessed by [a] probationer, in order for the item to fall within the permissible bounds of a probation search." 932 F.2d at 758. But *Davis* was concerned with the level of suspicion officers needed to search a container *within* a residence already subject to a valid search condition. *Id.* at 758–60. We made this clear in *Bolivar*, where we explained that *Davis* addressed "the level of certainty that the parolee owns, possesses, or controls a particular item *within the home*." *Bolivar*, 670 F.3d at 1095 (emphasis altered).

officers "must have 'reasonable grounds for believing' that the subject of the warrant resides in the apartment" before executing an arrest warrant. *Id.* at 1079 (quoting *Perez v. Simmons*, 884 F.2d 1136, 1140 (9th Cir. 1989), *as amended* 900 F.2d 213 (9th Cir. 1990), *as corrected* 998 F.3d 775 (9th Cir. 1993)). This avoided the risk of "diminishing the Fourth Amendment protections owed to [a third party] homeowner." *Id.*

We see no reason to depart from this standard with respect to a supervisee's vehicle. As in *Motley*, a reasonable suspicion standard runs the risk of officers conducting intrusive searches on vehicles that have no connection to the individual subject to the search condition. This case provides informative examples: Dixon attested that the police initially confused his minivan with another parked next to it, and that they also threatened to break into a nearby Audi. Both of these vehicles belonged to unrelated third parties. Applying a reasonable suspicion standard would place innocent third parties at heightened risk of having their vehicles searched simply because Dixon dropped his car keys next to their locations.

Moreover, requiring probable cause that the vehicle to be searched belongs to or is controlled by the suspect subject to the search condition is consistent with the framework we outlined in *Bolivar* and *Davis*, which addressed the level of suspicion required for objects within a residence. In *Bolivar*, we recognized that under *Motley*, law enforcement must first determine that there is probable cause that the residence is subject to the parolee's warrantless search condition. *See Bolivar*, 670 F.3d at 1095. But once officers have made this initial determination, reasonable suspicion applies to the "downstream issue of the level of certainty that the parolee owns, possesses, or controls a particular item within the

home." *Id.* (emphasis omitted). For example, in *Davis*, we applied the reasonable suspicion standard in assessing whether officers had reason to believe that a safe located in a probationer's bedroom in a shared apartment belonged to the probationer and not to his roommate. 932 F.2d at 758–59. But the minivan here, unlike the safe in *Davis*, was not found inside Dixon's residence, such as parked in his garage or in an assigned parking space.[5] Thus, law enforcement had not yet made an initial probable cause determination—in other words, whether Dixon owned or controlled the minivan was *not* a "downstream" issue. *See Bolivar*, 670 F.3d at 1095.

Because this case involves a vehicle, rather than a home, the government suggests that we should apply the "reasonable suspicion" standard given the lesser expectation of privacy afforded to vehicles. We do not disagree that "when it comes to the Fourth Amendment, the home is first among equals." *Jardines*, 569 U.S. at 6. But the government again takes our caselaw out of context. For example, it relies on *United States v. Scott*, 705 F.3d 410 (9th Cir. 2012), in which we described "the relatively minimal expectation of privacy that exists with respect to automobiles." *Id.* at 417. But we made this statement within the context of describing the automobile exception to the warrant requirement—an

---

[5] The government asserts that there is "no reason" that a heightened suspicion level "should apply to a vehicle that is parked outside of an apartment, as opposed to one parked inside a garage." But this argument illustrates precisely why probable cause is the appropriate standard here. If officers have probable cause that a parolee lives at a particular address, then *Davis* and *Bolivar* require only reasonable suspicion that the parolee owned or controlled the vehicle parked in the parolee's private garage. The same cannot be said for a vehicle found in an open parking lot, as Dixon's was here, because the initial probable cause determination has not yet been made.

exception that authorizes a warrantless search of a vehicle only "so long as there is *probable cause*." *Id.* (emphasis added). Thus, regardless of lesser privacy expectations recognized in vehicles, the automobile exception does not justify a warrantless search in the absence of probable cause. *See Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) (remanding to address whether law enforcement "may have been permitted to conduct a warrantless search of the car" because they had "probable cause to believe it contained evidence of a crime"); *California v. Acevedo*, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").

## C.

In sum, the officers needed probable cause that the blue Honda minivan was either owned by Dixon or under his control before physically entering it pursuant to Dixon's warrantless search condition. But on the record before us, it is unclear whether this standard was in fact met. The government makes no distinct argument as to probable cause, and the district court did not conduct an evidentiary hearing because the core underlying fact—the key fit the minivan—was undisputed. However, there are highly contested factual disputes as to whether Officer Ochoa had probable cause to believe that the particular blue minivan into which he inserted the key was owned or controlled by Dixon. We therefore remand this case for the district court to conduct an evidentiary hearing and to rule on Dixon's

suppression motion in light of the *Jones* and *Jardines* principles we now apply.[6]

## IV.

Finally, in the event that the vehicle search is upheld on remand, we address Dixon's challenge to the district court's denial of a reduction in his offense level for acceptance of responsibility at sentencing. The district court must begin sentencing proceedings by correctly calculating the applicable Sentencing Guidelines range. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). "A mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing." *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (per curiam).

A defendant who "clearly demonstrates acceptance of responsibility for his offense" is entitled to a two-level guideline reduction to his offense level. U.S.S.G. § 3E1.1(a). The application notes to the Guidelines explain that, although rare, "[c]onviction by trial . . . does not automatically preclude a defendant from consideration" of a reduction for acceptance of responsibility. *Id.* cmt. n.2. And "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond *the offense of conviction* in order to obtain a reduction under subsection (a)." *Id.* cmt. n.1(A) (emphasis added). Rather, a defendant "may remain silent in respect to relevant conduct beyond the offense of

---

[6] Because we remand this case to the district court to make a finding on probable cause in the first instance, we decline to address Dixon's argument that the unconstitutional apartment search tainted the jail search regardless of the minivan search's constitutionality.

conviction without affecting his ability to obtain a reduction under this subsection." *Id.* Thus, the failure to admit to conduct that the jury did not convict on does not necessarily preclude acceptance of responsibility. *Id.*; *see also United States v. Rutledge*, 28 F.3d 998, 1003 (9th Cir. 1994) ("[The defendant is] not required to confess to any relevant conduct beyond the offense of conviction in order to obtain the reduction."); *United States v. Piper*, 918 F.2d 839, 841 (9th Cir. 1990) (per curiam) ("To merit such a reduction, a defendant must show contrition for the crime of which he was convicted, but he need not accept blame for all crimes of which he may be accused.").

Given these principles, Dixon was at least eligible for the two-point acceptance reduction because he accepted responsibility for all conduct for which he was convicted. Dixon argues that from the beginning, even before he was indicted, he admitted that he possessed the controlled substances found on his person at Bayview Station, but contested that he possessed these drugs with an intent to distribute—the charged offense on which the jury hung. In other words, the jury convicted Dixon of only the lesser-included offense of simple possession, for which he had consistently admitted responsibility.[7] The Guidelines thus permitted the district court to conclude that Dixon had accepted responsibility for his criminal conduct. *Cf. United States v. Luong*, 965 F.3d 973, 992–93 (9th Cir. 2020) (holding that a defendant's challenge solely to the presence of an interstate-commerce element while conceding factual guilt did not preclude acceptance of responsibility); *United*

---

[7] The government disputes that Dixon accepted responsibility for his crimes of conviction, but because the district court categorically deemed Dixon ineligible for the two-point reduction, it did not make such a finding for us to review.

*States v. Rojas-Flores*, 384 F.3d 775, 780–81 (9th Cir. 2004) (holding that challenging a legal interpretation and cross-examining witnesses did not preclude acceptance of responsibility).

The district court's denial of Dixon's request for a two-point reduction is at odds with this understanding of the Guidelines.  It held that Dixon could not receive this reduction because "acceptance of responsibility is essentially [for] the charged offense," and Dixon did not accept responsibility for the greater offense of possession with intent to distribute.  As we have just explained, however, U.S.S.G. § 3E1.1(a) does not require that the defendant admit to all the charged offenses.  Therefore, the district court erred in finding Dixon categorically ineligible for this guideline reduction.

## V.

For the foregoing reasons, we **VACATE** the district court's denial of Dixon's motion to suppress, conditionally **VACATE** Dixon's conviction and sentence, and **REMAND** this case for an evidentiary hearing.  In the event the district court upholds the search on remand and reinstates Dixon's conviction, the district court shall conduct a resentencing so that it may make a factual finding regarding acceptance of responsibility in the first instance.