**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

MAY 9 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff - Appellee,<br><br>  v.<br><br>MATTHEW PHILLIP HAMPER,<br><br>        Defendant - Appellant. | No. 23-1087<br><br>D.C. No.<br>6:22-cr-00003-BMM-1<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Submitted May 7, 2024[**]
Seattle, Washington

Before: McKEOWN, BEA, and OWENS, Circuit Judges.

Matthew Phillip Hamper appeals from the district court's denial of his

motion to suppress, and the sentence imposed, in a case in which Hamper entered a

conditional guilty plea to possession with intent to distribute methamphetamine

and possession of an unregistered firearm.  Pursuant to his plea agreement with the

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

government, Hamper reserved the right to appeal the denial of his motion to suppress and the district court's factual findings regarding his sentence. As the parties are familiar with the facts, we do not recount them here. We affirm.

1.    We review de novo a ruling on a motion to suppress. *United States v. Dixon*, 984 F.3d 814, 818 (9th Cir. 2020). We reject Hamper's argument that the officers lacked probable cause to search the recreational vehicle ("RV"). The street address Hamper reported to the parole office as his residence encompassed the entire one-acre property; the parole officers had probable cause to believe that Hamper lived at that residence; and they had reasonable suspicion that Hamper controlled the RV located on the property (regardless of whether the RV is a dwelling or a vehicle).

To search a residence "pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched." *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) (en banc), *overruled on other grounds by United States v. King*, 687 F.3d 1189, 1189 (9th Cir. 2012) (en banc) (per curiam). But "once validly inside [a residence], [officers] need only 'reasonable suspicion' that an item is owned, possessed, or controlled by the parolee." *United States v. Bolivar*, 670 F.3d 1091, 1095 (9th Cir. 2012); *see also United States v. Davis*, 932 F.2d 752, 758 (9th Cir. 1991) (establishing that reasonable suspicion governs scope of parole/probation

searches).

The officers had probable cause to believe that Hamper lived at 1241 Highway 282. Hamper had reported that address to the parole office, and pursuant to his parole conditions, he was required to obtain permission from that office before changing his residence. A tipster, moreover, had indicated that Hamper was living at that address. *See United States v. Franklin*, 603 F.3d 652, 656 (9th Cir. 2010) (probable cause based in part on "a tip that Franklin was living in the [motel] room from a credible informant"); *United States v. Mayer*, 560 F.3d 948, 957-58 (9th Cir. 2009) (probable cause based in large part on two tips provided by neighbors and one anonymous phone call). Based on the "facts known to the officers at the time of the search," "a man of reasonable caution" would have believed that Hamper lived at 1241 Highway 282. *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

As the district court found, that probable-cause-as-to-residence determination extends to the entire property. *Cf. United States v. Alexander*, 761 F.2d 1294, 1301 (9th Cir. 1985) ("[A] warrant is valid when it authorizes the search of a street address with several dwellings if the defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect."). Hamper reported 1241 Highway 282 as his residence; it is

reasonable to conclude that that residence—a rural, one-acre, fenced-in property—encompassed the entire premises. *Cf. id*, 761 F.2d at 1300-01 (holding that warrant authorizing search of an entire forty-acre ranch with multiple dwellings, including one trailer not specifically mentioned in the warrant, was supported by probable cause because the entire property was under the suspect's control); *Blight v. City of Manteca*, 944 F.3d 1061, 1066-67 (9th Cir. 2019) (rejecting a challenge to the search of a mobile home based on lack of probable cause because "there was a substantial basis for the issuing judge to believe [defendant] was in control of the whole premises" on which the home was located). This is not the case of an apartment building, for instance, where various separate units may share a single street address.

Officer Lougee had reasonable suspicion that Hamper controlled the RV. *See Bolivar*, 670 F.3d at 1095; *Davis*, 932 F.2d at 758. Officer Lougee believed that Hamper's room in the main house was "primarily a spare bedroom" and that Hamper was sleeping elsewhere on the property. The officers also had reasonable suspicion that Hamper stored drugs in the RV, and prior to the search of the RV, Hamper had admitted to Officer Lougee that he was using meth. Officer Lougee knew that Sheriff Doolittle had "received credible information that Hamper has two baggies with 16 ounces of meth in each and 2 pounds of marijuana in his camper parked next to his parents' garage where he is living." When Officer

Lougee approached the RV parked next to the shed next to the garage, the air conditioning was on and no one else was on the property. These facts constitute reasonable suspicion of control by Hamper.

Hamper contends that, after he told Officer Lougee that the RV belonged to his brother and that the keys used to open the RV were not his, the officers should have performed a license plate check or searched the VIN. But the officers had reasonable suspicion that Hamper controlled the RV—regardless of who owned it. *See Davis*, 932 F.2d at 760 (noting that the police do not have a duty to inquire into ownership, possession, or control where reasonable suspicion has otherwise already been developed).

Hamper's challenge to the suppression ruling also fails if we were to analyze the RV as a vehicle. The RV was found within Hamper's residence, and as such, the officers required only reasonable suspicion that the RV was "owned, possessed, or controlled by the parolee." *Dixon*, 984 F.3d at 821 (quoting *Bolivar*, 670 F.3d at 1095). We have already established that they had such suspicion.

We affirm the district court's suppression ruling.

2.  The district court did not clearly err in calculating the weight of the drugs involved in Hamper's offense for the purposes of U.S.S.G. § 2D1.1(c). *See United States v. Mancuso*, 718 F.3d 780, 796 (9th Cir. 2013) (reviewing determination of the drug quantity involved in an offense under the sentencing

5                                                                23-1087

guidelines for clear error).

Both testimonial and documentary evidence support the district court's finding. Deputy Grimsrud's body camera shows him retrieving two bags from a cardboard box and placing both bags in a single Jefferson County Sheriff's Office ("JCSO") evidence bag. Both bags were also reflected in the JCSO evidence log—albeit in a way that was not self-evident. The total drug weight (3.790 lbs) is consistent with two bags in the amounts of 1.06 lbs and 2.73 lbs. The DEA documents and Agent Anderberg's testimony further confirm that the DEA received and tested two bags.

The district court did not clearly err in concluding that both bags (weighing 1.06 lbs and 2.73 lbs) constituted part of Hamper's offense, and as such, his offense involved at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine. *See* U.S.S.G. § 2D1.1(c)(2).

**AFFIRMED.**