FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ANTHONY LEE PED,
*Defendant-Appellant.*

No. 18-50179

D.C. No.
2:16-cr-00775-JAK-1

OPINION

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted September 9, 2019
Pasadena, California

Filed November 15, 2019

Before: John B. Owens, Ryan D. Nelson,
and Eric D. Miller, Circuit Judges.

Opinion by Judge Miller

# SUMMARY[*]

## Criminal Law

The panel affirmed Anthony Lee Ped's conviction for being a felon in possession of a firearm, vacated three conditions of supervised release, and remanded for modification of the conditions.

The panel held that the district court did not err in denying Ped's motion to suppress evidence that he possessed a firearm, which was found in a search of his home. The panel held that officers had probable cause to believe that Ped's brother, Nick Wilson, lived at Ped's house, most significantly because Wilson's probation officer had provided to the police a list stating that Wilson had reported living at that address. The panel explained that the officers reasonably relied on the list, notwithstanding that it was three months old, where there was nothing about Wilson's reported address suggesting that it was likely to be transitory and there was substantial information corroborating the listed address. The panel wrote that Ped's and his mother's statements when the officers arrived at the house that Wilson no longer lived there did not constitute convincing evidence that undermined the information the officer previously had received. The panel rejected Ped's argument, raised for the first time on appeal, that the search violated California's prohibition against arbitrary, capricious, or harassing searches.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel vacated as unconstitutionally vague under *United States v. Evans*, 883 F.3d 1154 (9th Cir. 2018), three conditions of supervised release, and remanded to the district court with instructions to impose whatever alternative conditions it deems appropriate. Because rewriting a provision of a sentence – as would be required here to achieve the purposes of the original conditions in a way that is not unconstitutionally vague – would exceed this court's authority under 18 U.S.C. § 3742(f)(1), the panel did not need to consider how § 3742(f)(1) affected this court's authority to modify a sentence without remanding.

## COUNSEL

Gia Kim (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Jake D. Nare (argued), Assistant United States Attorney; Dennise D. Willett, Chief, Santa Ana Branch; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Santa Ana, California; for Plaintiff-Appellee.

**OPINION**

MILLER, Circuit Judge:

Anthony Lee Ped pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He appeals the denial of his motion to suppress the evidence that he possessed a firearm, which was found in a search of his home. He also challenges several conditions of supervised release imposed as part of his sentence. We conclude that the search was lawful but the supervised-release conditions are not, so we affirm the conviction but remand for modification of the conditions.

I

In April 2016, Ped's brother, Nick Wilson, was released from the custody of the California Department of Corrections and placed on post-release community supervision, a status similar to parole. *See* Cal. Penal Code § 3450 *et seq*. The terms of that supervision permitted officers to search Wilson's "residence and any other property under [his] control . . . without a warrant day or night." Upon his release, Wilson informed his probation officer that he lived at his family's home—which is also Ped's home—on Eliot Street in Santa Paula, California. Soon thereafter, officers conducted a warrantless search of the house. Although Wilson was not present that day, officers spoke with his mother and confirmed that he lived there. Later, officers went to the Eliot Street address in response to a family disturbance call. During that visit, they met Ped and his mother, and they again confirmed that Wilson lived there.

In June 2016, Wilson's probation officer provided the Santa Paula Police Department with a list of names and

addresses of persons living in Santa Paula who were subject to supervision. The list included Wilson and the Eliot Street address. The next day, however, Wilson was arrested on unrelated charges and held at the Ventura County Jail, where he remained for three months. Upon his release, he told the probation officer that he would be living in Newbury Park, California. The probation officer did not independently verify that new address, nor did he update the list he had previously given the Santa Paula Police Department.

About ten days after Wilson's release, officers of the Santa Paula Police Department—including one of the officers involved in the response to the earlier family disturbance call—randomly selected Wilson for a routine search of individuals on supervised release. Not knowing of Wilson's move to Newbury Park, the officers went to the Eliot Street address. As they approached the house, they heard a commotion inside, pushed open the door, and saw Ped holding a methamphetamine pipe. Both Ped and his mother told the officers that Wilson no longer lived there, but the officers disbelieved them and searched the residence anyway. The search turned up seven firearms; under questioning, Ped admitted that the weapons were his and that he had previously been convicted of a felony.

A grand jury indicted Ped on three counts, including being a felon in possession of a firearm, in violation of section 922(g)(1). After the district court denied a motion to suppress the evidence found in his house, Ped entered into a conditional plea agreement in which he pleaded guilty to the section 922(g)(1) count but retained the right to appeal the denial of the suppression motion. He was sentenced to 70 months of imprisonment, to be followed by three years of supervised release. We have jurisdiction over his appeal under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

II

We begin by considering the district court's denial of the motion to suppress, which we review de novo. *See United States v. Johnson*, 875 F.3d 1265, 1273 (9th Cir. 2017). Where, as here, the police acted without a warrant, the government has the burden of showing that the search was lawful. *See United States v. Marshall*, 488 F.2d 1169, 1186 (9th Cir. 1973); *see also United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994). We conclude that the government carried that burden.

The Fourth Amendment protects "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures," U.S. Const. amend. IV, and it is a "basic principle of Fourth Amendment law . . . that searches and seizures inside a home without a warrant are presumptively unreasonable," *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citation omitted). Parolees, however, "have severely diminished expectations of privacy by virtue of their status," *Samson v. California*, 547 U.S. 843, 852 (2006), and they may be subject to warrantless searches of their homes without a warrant or suspicion of wrongdoing. *Cuevas v. De Roco*, 531 F.3d 726, 732 (9th Cir. 2008) (per curiam). That is true even if other people also live there. *United States v. Bolivar*, 670 F.3d 1091, 1092–93, 1096 (9th Cir. 2012); *see also Samson*, 547 U.S. at 856–57. But the police must "be reasonably sure that they are at the *right* house"; a parolee's diminished expectation of privacy cannot "justif[y] the entry into and search of a third person's house to search for the parolee." *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005) (en banc), *overruled in part on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc) (per curiam). To protect the interests of third parties, "officers must have probable cause to believe

that the parolee is a resident of the house to be searched." *Id.* at 1080; *see also United States v. Grandberry*, 730 F.3d 968, 973 (9th Cir. 2013).

This case therefore turns on whether the officers had probable cause to believe that Wilson lived at Ped's house. "[P]robable cause as to residence exists if an officer of 'reasonable caution' would believe, 'based on the totality of [the] circumstances,' that the parolee lives at a particular residence." *Grandberry*, 730 F.3d at 975 (quoting *United States v. Diaz*, 491 F.3d 1074, 1077–78 (9th Cir. 2007)). In this case, the most significant circumstance establishing probable cause was the list provided to the police by the probation officer, which stated that Wilson had reported living at the Eliot Street address. In *Motley*, we held that officers acted reasonably when they relied on a similar list. 432 F.3d at 1080–82. The same is true here.

Ped emphasizes that the list in this case was three months old, while the one in *Motley* was only one month old. We do not question that at a certain point, a reported address would become so old that it would no longer be reasonable for officers to rely on it. But nothing about Wilson's reported address suggested that it was likely to be transitory, and although a person living in a house with family members might move away in less than three months, it would be reasonable to expect that he would still live there. *See United States v. Harper*, 928 F.2d 894, 896–97 (9th Cir. 1991) (holding that officers had probable cause to believe that the parolee lived in a particular house because, among other factors, the parolee's family rented the house and two of his brothers lived there), *overruled in part on other grounds by King*, 687 F.3d at 1189.

In addition, the staleness of information establishing probable cause must be evaluated "in light of the particular

facts of the case," and here those facts include substantial information corroborating the listed address. *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (quoting *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991)). Specifically, the officers reasonably relied on their previous visits to the Eliot Street address, in which they had learned that Wilson lived there. Those facts supported the reasonableness of their belief that they were at the right house.

Ped points out that, just days before the search, Wilson had told his probation officer that he would be living in Newbury Park. The officers who conducted the search did not know that, however, so it is not relevant to the assessment of probable cause, which takes into account "the totality of the circumstances known to the officers at the time of the search." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc) (quoting *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004)); *see also Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials.").

To be sure, the officers could have conducted additional inquiries to confirm that Wilson still lived at Ped's house. But because the officers had a reasonable basis for believing that Wilson lived there, they were not required to take further steps to verify his last reported address. *Cf. Cuevas*, 531 F.3d at 733–34 (concluding that officers lacked probable cause when they had not conducted surveillance or otherwise confirmed a parolee's stale address). We have held that officers must conduct further inquiries before searching residences that were *not* previously reported by the parolee. *Grandberry*, 730 F.3d at 977; *United States v. Howard*,

447 F.3d 1257, 1268 (9th Cir. 2006), *overruled in part on other grounds by King*, 687 F.3d at 1189. Indeed, in *Grandberry*, we faulted officers for searching a residence different from that reported on a six-month-old list, explaining that "there was no basis for doubting that Grandberry lived where he had reported he did." 730 F.3d at 980. Here, too, the officers conducting the search at Eliot Street had no basis for doubting that Wilson lived there.

Ped argues that even if the officers had probable cause when they arrived at the house, it became unreasonable for them to proceed with a search once Ped and his mother told them that Wilson no longer lived there. We rejected just such an argument in *Motley*, reasoning that as long as the officers had information establishing probable cause, they were entitled to proceed unless "presented with convincing evidence that the information they had relied upon was incorrect." *Motley*, 432 F.3d at 1082 (quoting *Moore v. Vega*, 371 F.3d 110, 118 (2d Cir. 2004)). Ped's and his mother's statements were hardly "convincing evidence"— neither Ped nor his mother provided an alternate address for Wilson, and Ped's effort to discourage the search came just moments after he had been seen with a methamphetamine pipe. Those statements, coming from "less-than-disinterested source[s], did not undermine the information the officers previously had received." *Id.*; *cf. Wesby v. District of Columbia*, 816 F.3d 96, 107 (D.C. Cir. 2016) (Kavanaugh, J., dissenting from the denial of rehearing en banc) ("[I]n the heat of the moment, police officers are entitled to make reasonable credibility judgments and to disbelieve protests of innocence."), *rev'd*, 138 S. Ct. 577 (2018).

For the first time on appeal, Ped also asserts that the search was unreasonable because it violated California's

prohibition against arbitrary, capricious, or harassing searches. *See United States v. Cervantes*, 859 F.3d 1175, 1183 (9th Cir. 2017); *People v. Reyes*, 968 P.2d 445, 451 (Cal. 1998). In support of that theory, he notes that one of the officers had stated that "Wilson and his family are well-known" to the Santa Paula Police Department, and another officer expressed a desire to return to the house to search for more weapons. That evidence does not come close to satisfying Ped's burden of showing that "the officers conducted the search for an improper purpose, such as a desire to harass him or out of personal animosity toward him." *Cervantes*, 859 F.3d at 1183. And it falls well short of establishing plain error that could be a basis for reversal in the absence of an objection below. *See* Fed. R. Crim. P. 52(b).

### III

As conditions of Ped's supervised release, the district court required that Ped "support his . . . dependents and meet other family responsibilities," that he "work regularly at a lawful occupation," and that he "notify third parties of risks that may be occasioned by [his] criminal record or personal history or characteristics." Until recently, those conditions were standard terms recommended by the Sentencing Guidelines, but in *United States v. Evans*, 883 F.3d 1154 (9th Cir. 2018), we joined the Seventh Circuit in holding that they are unconstitutionally vague. *Id.* at 1162–64; *see United States v. Thompson*, 777 F.3d 368, 379 (7th Cir. 2015); *compare* U.S.S.G. § 5D1.3(c) (2015) (recommending standard conditions, including the language at issue here), *with* U.S.S.G. § 5D1.3(c) (2016) (recommending amended standard conditions). Ped now asks that the conditions be corrected.

In his plea agreement, Ped waived the right to appeal any conditions of supervised release set forth in General Order 05-02 of the district court, which covers the conditions at issue here. We have held, however, that a plea agreement does not affect our jurisdiction and that the government can waive its ability to rely on an appeal waiver. *United States v. Jacobo Castillo*, 496 F.3d 947, 954–57 (9th Cir. 2007) (en banc). The government has done so here. And although Ped did not object below, the government agrees that the imposition of the conditions constituted plain error. We therefore must vacate the unconstitutional conditions.

In its brief, the government suggested that we rewrite the conditions and affirm the judgment as modified. Before oral argument, however, we directed the parties to address 18 U.S.C. § 3742(f)(1), which provides that "[i]f the court of appeals determines that . . . the sentence was imposed in violation of law . . . , the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate." Upon further consideration, the government changed its position and argued that a remand is appropriate. We agree.

The statutory text is unambiguous. To reiterate, it provides that if a "sentence was imposed in violation of law," the court of appeals "*shall* remand the case for further sentencing proceedings." 18 U.S.C. § 3742(f)(1) (emphasis added). "The word 'shall' generally imposes a nondiscretionary duty," and nothing in section 3742(f)(1) suggests that this statute is an exception. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018). It follows that, as the Supreme Court has observed, "a remand is required under § 3742(f)(1)" whenever the reviewing court concludes that the sentence was imposed "in violation of law." *Williams v. United States*, 503 U.S. 193, 202 (1992); *see also United*

*States v. Williams*, 552 F.3d 592, 594 (7th Cir. 2009) (noting that section 3742(f)(1) has cabined "[a]ny discretion we may once have had to simply amend the judgment" without remanding).

In our published decisions, we have declined to remand in only two circumstances. Neither is present here.

First, we have recognized our authority to adopt a narrow construction of conditions of supervised release if they are "'readily susceptible' to [a] limiting construction." *United States v. Gnirke*, 775 F.3d 1155, 1166 (9th Cir. 2015); *see also United States v. Quinzon*, 643 F.3d 1266, 1272–73 (9th Cir. 2011). That approach is consistent with the statute because it does not involve our determining that the sentence was "imposed in violation of law." 18 U.S.C. § 3742(f)(1). Rather, in order to review the sentence, we must determine what it means, and in doing so we appropriately apply the principle that an interpretation that makes a provision valid is to be preferred over one that would make it invalid. But because the conditions of Ped's supervised release are identical to those we invalidated in *Evans*, no plausible interpretation of the conditions could make them valid under that decision. What is required here is a rewriting, not merely a narrowing construction.

Second, we have sometimes stricken invalid provisions of a sentence without remanding. *See, e.g.*, *United States v. Hall*, 912 F.3d 1224, 1226–27 (9th Cir. 2019) (per curiam); *United States v. Peters*, 470 F.3d 907, 909 (9th Cir. 2006) (per curiam); *United States v. Long*, 301 F.3d 1095, 1108 (9th Cir. 2002) (per curiam). In none of those cases did we discuss section 3742(f)(1) or consider how it affected our authority to modify a sentence without remanding. *Cf. Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither

brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). We need not consider that issue now because whatever the scope of our authority to strike invalid provisions of a sentence, correcting the invalid conditions in this case would require us to do much more: We would have to rewrite the conditions so as to achieve the purposes of the original conditions in a way that is not unconstitutionally vague. Rewriting a provision of a sentence exceeds our authority under section 3742(f)(1). *See Gnirke*, 775 F.3d at 1170 (M. Smith, J., concurring in the judgment) ("[I]t is not our role as an appellate court to craft conditions of supervised release.").

The district court "is better suited to the job of crafting adequate but not overly restrictive conditions." *United States v. Sales*, 476 F.3d 732, 738 (9th Cir. 2007). We therefore vacate supervised-release conditions five, six, and fourteen and remand to the district court with instructions to impose whatever alternative conditions it deems appropriate.

**AFFIRMED in part, VACATED in part, and REMANDED**.