**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10027 |
| *Plaintiff-Appellee,* | D.C. No. 3:19-cr-00517-WHO-1 |
| v. | |
| CHRISTIAN ALEJANDRO ESTRELLA, | OPINION |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted February 7, 2023
San Francisco, California

Filed June 6, 2023

Before: Jay S. Bybee and Patrick J. Bumatay, Circuit
Judges, and Richard D. Bennett,* Senior District Judge.

Opinion by Judge Bennett

---

* The Honorable Richard D. Bennett, United States Senior District Judge for the District of Maryland, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's denial of Christian Alejandro Estrella's motion to suppress evidence in a case in which Estrella entered a conditional guilty plea to being a felon in possession of a firearm and ammunition.

Estrella was arrested after two officers discovered a handgun concealed in his vehicle.  At the time of this encounter, Estrella was a registered gang member on California state parole, and was subject to a suspicionless search condition that has been upheld by the Supreme Court.

Estrella argued on appeal that the officers did not have advance knowledge that he was on parole at the time of this encounter.  It is firmly established that a search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment. This Court has held that as a threshold requirement an officer must know of a detainee's parole status before that person can be detained and searched pursuant to a parole condition. But the Court has yet to specifically address how precise that knowledge must be.

The panel held that a law enforcement officer must have probable cause to believe that a person is on active parole before conducting a suspicionless search or seizure pursuant to a parole condition.  Consistent with caselaw, and with general Fourth Amendment principles, the officer must

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

possess advance knowledge of an applicable parole condition before they may detain or search a parolee. That knowledge must be particularized enough for the officer to be aware that a parole condition applies and authorizes the encounter. However, the officer need not be absolutely certain, with ongoing day-by-day or minute-by-minute awareness of the subject's parole status. Instead, it is sufficient for the officer to find, using the well-established rules governing probable cause, that the individual to be searched is on active parole, and an applicable parole condition authorizes the search or seizure at issue.

Applying this standard, the panel concluded that the arresting officers had probable cause to believe that Estrella remained on active parole when he was detained and searched. The panel further held that this encounter did not violate California's independent prohibition on arbitrary, capricious, or harassing searches.

## COUNSEL

Yevgeniy M. Parkman (argued) and Angela Chuang, Assistant Federal Public Defenders; Jodi Linker, Federal Public Defender; Federal Public Defender's Office; San Francisco, California; for Defendant-Appellant.

Molly Smolen (argued) and Kristina Green, Assistant United States Attorneys; Matthew M. Yelovich, Appellate Section Chief, Criminal Division; Stephanie M. Hinds, United States Attorney; Office of the United States Attorney; San Francisco, California; for Plaintiff-Appellee.

## OPINION

BENNETT, District Judge:

On August 14, 2019, Appellant Christian Alejandro Estrella ("Estrella") was arrested as a felon in unlawful possession of a firearm after two officers discovered a handgun and ammunition concealed in his vehicle. At the time of this encounter, Estrella was a registered gang member on California state parole, and was subject to a suspicionless search condition that has been upheld by the Supreme Court. *See* Cal. Penal Code § 3067(b)(3); *see also Samson v. California*, 547 U.S. 843, 857 (2006). After entering a plea of guilty and preserving his right to appeal, Estrella appeals the district court's denial of his motion to suppress evidence, arguing that the officers did not have advance knowledge that he was on parole at the time of this encounter. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

It is firmly established that "[a] search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment." *United States v. Cervantes*, 859 F.3d 1175, 1183 (9th Cir. 2017). As a threshold requirement, we have held that "an officer must know of a detainee's parole status before that person can be detained and searched pursuant to a parole condition." *Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir. 2005). However, this Court has yet to specifically address how precise that knowledge must be.

For the reasons articulated below, we now hold that a law enforcement officer must have probable cause to believe that a person is on active parole before he may be detained and searched pursuant to a parole condition. Although a law

enforcement officer must have "advance knowledge" that the detainee remains on active parole, *United States v. Cesares*, 533 F.3d 1064, 1076 (9th Cir. 2008), the officer need not "know to an absolute certainty," with precise day-by-day or minute-by-minute information of the detainee's parole status, *People v. Douglas*, 193 Cal. Rptr. 3d 79, 89 (Cal. Ct. App. 2015). It is sufficient for the officer to determine, using the well-established rules governing probable cause, that the individual to be detained and searched is on active parole, and that an applicable parole condition authorizes the challenged search or seizure.

Applying this standard, we conclude that the arresting officers had probable cause to believe that Estrella remained on active parole when he was detained and searched on August 14, 2019. We further hold that this encounter did not violate California's independent prohibition on arbitrary, capricious, or harassing searches. Accordingly, we affirm the denial of Estrella's motion to suppress.

## BACKGROUND

As this appeal arises from the denial of a motion to suppress, we review the facts set forth in the district court's order denying that motion, and the declarations, exhibits, and footage upon which that order was founded. "We review the denial of a motion to suppress de novo, and any underlying findings of fact for clear error." *United States v. Vandergroen*, 964 F.3d 876, 878 (9th Cir. 2020). In 2015, Estrella stipulated to a gang-related sentence enhancement following a conviction for Obstructing or Resisting an Executive Officer, in violation of Cal. Penal Code § 69. As part of his gang registration requirements, Estrella admitted that he had been a member of the Angelino Heights Sureños,

a criminal gang based in Santa Rosa, California, for five years.

Following his release from prison, Estrella relocated to Lakeport, California. On July 2, 2018, Estrella visited the Lakeport Police Department ("LPD") to register as a convicted gang member, as required by Cal. Penal Code § 186.30. The police department informed Officer Tyler Trouette ("Trouette"), LPD's gang specialist and a member of the Lake County Gang Task Force,[1] that Estrella was on parole and was registered as a member of the Angelino Heights Sureños gang. Trouette familiarized himself with Estrella's "criminal history and his previous gang-related convictions." However, the record is silent as to whether Trouette personally became aware of the date Estrella's parole was set to conclude.

On July 3, 2018, one day after Estrella completed his gang registration, Trouette visited Estrella at his home. According to the Government, Trouette and Estrella discussed Estrella's parole conditions, and confirmed that he was prohibited from associating with a gang or wearing gang attire. In his declaration, cited by the district court, Trouette describes this conversation as follows:

> I told Mr. Estrella that I had not yet reviewed
> his gang conditions, but I presumed that they
> included that he could not associate with

---

[1] The Lake County Gang Task Force "is a county-wide joint task force with participants from several law enforcement agencies operating in Lake County." The task force held monthly meetings, during which its members were apprised of "gang activity in Lake County as well as individual gang members and law enforcement efforts relating to crimes perpetrated by gangs." Its members were also responsible for investigating gang activity on behalf of their local police department.

> other gang members or possess things that are associated with the gang. Mr. Estrella said that he knew all the rules. Later in the conversation, I told him that LPD had knowledge of the Angelino[] Heights Sure[ñ]os and that he would not get away with wearing Oakland Athletics' hats or other things like that. Based on my training and experience, I know Oakland Athletics' hats are commonly worn by members of the Angelino[] Heights Sure[ñ]os because, to members of the gang, the 'A' on the hat signifies 'Angelino.'

Thereafter, between July 2018 and August 2019, Trouette "had several additional conversations with . . . Estrella's parole officer about . . . Estrella." Through these conversations, the parole officer informed Trouette of Estrella's "conditions of parole and gang terms." Additionally, in April 2019, the parole officer informed Trouette that Estrella "had violated his parole by committing a battery."[2] He did not indicate at any point that Estrella's parole was soon to expire.

This appeal arises from an encounter between Trouette and Estrella on August 14, 2019—fourteen months after Trouette learned that Estrella had been placed on parole, and only four months after Trouette was informed that Estrella had violated his parole conditions. At the time, Trouette was the Field Training Officer for Officer Ryan Cooley ("Cooley"), a new officer enrolled in LPD's field training

---

[2] The record does not suggest that any action was taken as a result of this alleged parole violation.

program. At about 8:00 p.m., Trouette and Cooley were driving westbound on Lakeport's Armstrong Street in a marked patrol car. As they passed Polk Street, Trouette saw Estrella standing outside his residence next to a white Honda Accord and decided "to check up on him and verify that he was abiding by the terms of his parole." However, he declined to inform Cooley of Estrella's parole conditions, as he wanted the trainee to "find the relevant information through his own investigation."

The officers turned around and drove up Polk Street. As they approached Estrella, Trouette observed that the defendant was wearing an Oakland Athletics hat, which he recognized as a sign of the Angelino Heights Sureños gang and a violation of Estrella's parole condition prohibiting gang symbols and attire. The officers parked "several car lengths" down the street and approached on foot, in full police uniform and with their guns visible. Estrella walked towards them and met them partway.[3]

A short conversation ensued. Cooley asked Estrella "what he was up to." Estrella explained that he had just returned home from work and was working on his car. Trouette instructed Cooley to inform dispatch of their location, and Cooley stepped away to convey this information. While Cooley was speaking to dispatch,

---

[3] The parties contest whether the officers directed Estrella to stop or to approach. This appears to be an unresolved factual dispute: Estrella alleges in his declaration that the officers "indicated to [him] to stop," while Officers Trouette and Cooley attest in their declarations that they gave no such order, and the officers' body camera footage begins after this point. The district court observed and highlighted this dispute but declined to resolve it. As we ultimately hold that this encounter was a valid parole seizure pursuant to Cal. Penal Code § 3067, we need not reach this issue.

Estrella's mother came out of the house, and Trouette inquired about the Oakland Athletics hat. Estrella described it as a "work hat,"[4] but Trouette reiterated that Estrella was "flying [his] Angelino Heights 'A,'" and that he "shouldn't be wearing [it]."

About ninety seconds after the encounter began, Cooley returned to the scene. Cooley asked Estrella whether he had identification and whether he was on probation or parole. Estrella confirmed that he was on parole and volunteered his driver's license, and Cooley again contacted dispatch to verify this information. Dispatch confirmed that Estrella was on probation until October 2019, that he was on California parole until 2020, and that he had registered as a convicted felon and a member of the Angelino Heights Sureños gang. Thereafter, the officers searched his person and his vehicle. Estrella informed Trouette that he had a gun in the car, and the officer promptly placed him under arrest. Cooley found a loaded Ruger 9mm handgun and nine rounds of ammunition in the car's center console.

On October 10, 2019, Estrella was indicted for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). On January 31, 2020, Estrella moved to suppress the handgun found in the car. The parties' arguments turned primarily on whether the encounter was valid as a parole search and seizure, pursuant to Cal. Penal Code § 3067. Estrella claimed that the roadside encounter was a Fourth Amendment seizure, and that this Court's precedent requires an officer to have "actual knowledge" of an applicable parole condition before they may detain and search a parolee. As Trouette was unaware of the precise end

---

[4] Estrella explained in his declaration that he was wearing this hat to keep his hair out of his eyes as he worked on his car.

date of Estrella's parole, Estrella argued that Trouette did not possess the requisite knowledge to conduct a parole search or seizure. The Government responded by arguing that Trouette had a "reasonable belief" in Estrella's parole status due to his meeting with Estrella, his conversations with Estrella's parole officer, his knowledge of a recent parole violation, and his experience with the standard terms of California parole. In the alternative, the Government argued that Estrella had not been "seized" for Fourth Amendment purposes before acknowledging that he was on parole.

Following a hearing, the district court denied Estrella's motion to suppress. The court assumed without deciding that a seizure had occurred but found that it was valid as a parole seizure regardless. The court concluded that Trouette had a "reasonable belief" in Estrella's parole status and that "this level of knowledge is sufficient" to justify a suspicionless parole seizure under Cal. Penal Code § 3067, as construed in *Samson*, 547 U.S. at 846–47. Estrella entered a guilty plea pursuant to Fed. R. Crim. P. Rule 11(a)(2), preserving his right to appeal the denial of his motion to suppress. On January 27, 2022, he was sentenced to time served followed by a three-year period of supervised release and referred to the district court's alternatives to incarceration program. He was also directed to forfeit the firearm and ammunition seized during the search, and to pay a $100 special assessment.

This appeal followed.

## STANDARD OF REVIEW

We review the denial of a motion to suppress evidence de novo. *United States v. Peterson*, 995 F.3d 1061, 1064 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 472 (2021); *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016); *United States*

*v. Forrester*, 512 F.3d 500, 506 (9th Cir. 2008). The district court's underlying factual findings are reviewed for clear error, *Peterson*, 995 F.3d at 1064, while pure questions of law and mixed questions of law and fact are reviewed de novo. *See United States v. Scott*, 705 F.3d 410, 414–15 (9th Cir. 2012). Additionally, this Court may affirm the denial of a motion to suppress "on any basis supported by the record." *United States v. McClendon*, 713 F.3d 1211, 1218 (9th Cir. 2013).

## DISCUSSION

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also Carpenter v. United States*, 138 S. Ct. 2206, 2214 (2018) ("[T]he Amendment seeks to secure 'the privacies of life' against 'arbitrary power.'" (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886))). It is firmly established that searches or seizures "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *United States v. Brown*, 996 F.3d 998, 1004 (9th Cir. 2021) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). Among these exceptions, "[a] search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment." *Cervantes*, 859 F.3d at 1183; *United States v. Job*, 871 F.3d 852, 859 (9th Cir. 2017); *United States v. King*, 736 F.3d 805, 810 (9th Cir. 2013).

The State of California imposes expansive search conditions on its parolees. Pursuant to Cal. Penal Code § 3067(b)(3), every parolee under the state's supervision "is subject to search or seizure . . . at any time of the day or night, with or without a search warrant or with or without cause." In *Samson v. California*, the Supreme Court held that this broad provision satisfies the mandates of the Fourth Amendment, as the state's interests in public safety and reintegration outweigh the privacy interests of its parolees. 547 U.S. 843, 857 (2006). As parole is a "an established variation on imprisonment" subject to strict monitoring and behavioral conditions, *id.* at 850 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)), parolees' expectations of privacy are "severely diminished . . . by virtue of their status alone," *id.* at 852. Those limited privacy interests are comprehensively outmatched by the state's "'overwhelming interest' in supervising parolees" to reduce recidivism and "promot[e] reintegration and positive citizenship." *Id.* at 853 (quoting *Penn. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 365 (1998)).

Nevertheless, law enforcement officers do not possess unfettered discretion to detain and search suspected parolees. Two principles constrain an officer's authority to conduct a suspicionless parole search or seizure pursuant to Cal. Penal Code § 3067(b)(3). *See United States v. Korte*, 918 F.3d 750, 754 n.1 (9th Cir. 2019); *United States v. Grandberry*, 730 F.3d 968, 975 (9th Cir. 2013). First, law enforcement must know that the subject is on active parole before initiating a search or seizure pursuant to a parole condition. *Moreno*, 431 F.3d at 641. Second, the encounter must not violate California's statutory prohibition on "arbitrary, capricious or harassing" searches. *Korte*, 918 F.3d at 754 n.1; *see* Cal. Penal Code § 3067(d) ("It is not the intent of the Legislature

to authorize law enforcement officers to conduct searches for the sole purpose of harassment.").

Estrella invokes both limitations to argue that his detention and search violate the Fourth Amendment.[5] First, Estrella claims that an officer must possess "actual knowledge" of the suspect's parole status before conducting a suspicionless search or seizure pursuant to a parole condition. Applying this framework, he argues that Trouette did not know that Estrella was on active parole, as Trouette did not know precisely when Estrella's parole had begun or when it was scheduled to conclude. Second, Estrella argues this encounter was arbitrary, capricious, or harassing, as Trouette was motivated to train Cooley, not by legitimate law enforcement concerns. Both arguments fail. For the reasons detailed below, we hold that an officer must have probable cause to believe that a person is on active parole before initiating a parole search, and that the information known to Trouette at the time of the encounter satisfied this requirement. Additionally, we hold that this encounter does

---

[5] The district court assumed without deciding that Estrella was detained. Generally, whether a consensual encounter escalates into a seizure depends on the totality of the circumstances surrounding the encounter. *Brown*, 996 F.3d at 1005; *accord United States v. Mendenhall*, 446 U.S. 544, 557–58 (1980) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). As discussed above, there is an outstanding factual dispute as to whether the officers commanded Estrella to stop. As this dispute is inextricable from the totality of the circumstances, we assume without deciding that a seizure occurred, and address only the parole search exception. *Cf. McClendon*, 713 F.3d at 1218 (holding that this Court may affirm the denial of a motion to suppress "on any basis supported by the record").

not violate California's prohibition on arbitrary, capricious, and harassing searches.

## I.        Knowledge Prerequisite to Parole Searches

The parties dispute whether Trouette had sufficient knowledge of Estrella's parole status to detain and search him pursuant to Cal. Penal Code § 3067. Broadly, the Fourth Amendment requires officers to have knowledge of the facts justifying a search or seizure at the time of the challenged encounter. *See Moreno*, 431 F.3d at 639; *see, e.g.*, *Job*, 871 F.3d at 860; *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016). Those same principles require that "an officer must know of a detainee's parole status before that person can be detained and searched pursuant to a parole condition." *Moreno*, 431 F.3d at 641; *see also People v. Sanders*, 73 P.3d 496, 505 (2003). An officer cannot retroactively validate a search or seizure conducted without suspicion by later discovering that the person searched was on active parole and subject to an applicable search condition. *Moreno*, 431 F.3d at 641; *accord Fitzgerald v. City of Los Angeles*, 485 F. Supp. 2d 1137, 1143 (C.D. Cal. 2007) ("[A]dvance knowledge of a parolee's status is critical to the constitutionality of a suspicionless search of a parolee. . . . If the officer learns of this status after the suspicionless search has commenced, the search is in violation of the Fourth Amendment.").

While we have held that an officer must possess advance knowledge of a parolee's status to conduct a parole search, we have yet to decide how precise that knowledge must be. As the LPD's gang specialist, Trouette was familiar with the effect of gang-related convictions and the typical length of California parole terms. Prior to the encounter on August 14, 2019, he had spoken with Estrella personally, familiarized

himself with Estrella's case, and held several conversations with Estrella's parole officer to discuss his "conditions of parole and gang terms." During these conversations, Trouette learned that Estrella had been on parole since roughly July 2018, that Estrella was prohibited from associating with gang members or wearing gang attire, and that Estrella had violated a parole condition in April 2019. However, the record is silent as to whether he was ever informed of the precise date that Estrella's parole commenced, or when it was scheduled to conclude.[6] Accordingly, this case raises a question of degree: What level of prior knowledge must an officer possess to initiate a suspicionless parole search?

* * *

Estrella relies on *United States v. Caseres*, in which we held that California's statutory search condition "validates a search only if the police had advance knowledge that the search condition applied." 533 F.3d 1064, 1075–76 (9th Cir. 2008). In *Caseres*, the defendant was arrested following a foot chase, and admitted to the arresting officer that he was on parole. *Id.* at 1067–68, 1074. Sometime later, officers

---

[6] It is undisputed that Cooley was entirely unaware of Estrella's parole status at the time of the challenged encounter. However, Trouette's knowledge is imputed to Cooley under the collective knowledge doctrine. *See United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010) (holding that knowledge may be imputed between officers (1) "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned," or (2) "where an officer . . . with direct personal knowledge of *all* the facts necessary to give rise to reasonable suspicion . . . directs or requests that another officer . . . conduct a stop, search, or arrest" (quoting *United States v. Ramirez*, 473 F.3d 1026, 1032–33 (9th Cir. 2007))).

searched the defendant's car without any reason to believe it contained evidence of a crime, and discovered a firearm and ammunition that led to charges as a felon in possession. *Id.* at 1068, 1076. The district court denied the defendant's motion to suppress, and the defendant entered a conditional guilty plea. *Id.* at 1068. We upheld the arrest but found the search unconstitutional. *Id.* at 1069, 1076.[7] Although the officer had testified that he "was aware Caseres was on parole prior to ordering the search of his vehicle," the government had failed to show that the officer "was aware that Cal. Pen. Code § 3067 applied." *Id.* at 1076. We specifically noted that the record was devoid of evidence that the officer knew the defendant "was a parolee of the State of California, to whom § 3067(a) applied," or that the officer "knew whether Caseres's prior offense had been committed prior to January 1, 1997," as required by the statute. *Id.*

Estrella analogizes *Caseres* to argue that the "advance knowledge" requirement set forth by our caselaw demands nothing short of "actual knowledge." He proposes a rigorous standard under which "[a]n officer does not know that a person is presently on parole unless the facts known to the officer require that conclusion." Any lesser rule, he argues, would depart from our precedent and derogate from the privacy protections embodied by the Fourth Amendment,

---

[7] The district court in *Caseres* held the search was justified as a search incident to arrest or an inventory search, each separate exceptions to the warrant requirement. *Id.* at 1070; *see South Dakota v. Opperman*, 428 U.S. 364, 372 (1976) (inventory search); *United States v. Robinson*, 414 U.S. 218, 235 (1973) (search incident to arrest). We found both exceptions inapplicable, as the search of Caseres' vehicle "was too far removed in time from the arrest" to qualify as a search incident to arrest, and that it did not "serve any community caretaking purpose," as required for an inventory search. *Caseres*, 533 F.3d at 1074.

encouraging unfettered searches of suspected parolees. Applying this standard, Estrella argues that Trouette lacked advance knowledge of Estrella's parole status, as he did not know the precise end date of Estrella's parole and did not call dispatch to update this information.

This argument reads too much into our caselaw. The "advance knowledge" threshold imposed by our jurisprudence is not an "actual knowledge" requirement. Rather, it addresses the general prohibition on retroactive justifications. While we have held that the parole search exception "validates a search only if the police had advance knowledge that the search condition applied," *Caseres*, 533 F.3d at 1075–76, the thrust and import of this rule is that officers "cannot retroactively justify a suspicionless search and arrest on the basis of an after-the-fact discovery of an arrest warrant or a parole condition." *Moreno*, 431 F.3d at 641; *accord Fitzgerald*, 485 F. Supp. 2d at 1142 ("[A] knowledge-first requirement is appropriate to deter future police misconduct and to effectuate the Fourth Amendment's guarantee against unreasonable searches and seizures" (quoting *Sanders*, 73 P.3d at 504)). Although these cases found the officer's *lack* of advance knowledge dispositive, they did not discuss or decide the *standard* for knowledge. Such a standard should not be assumed. *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("[C]ases are not precedential for propositions not considered, or for matters that are simply assumed." (cleaned up)).

Nor do we read the facts of *Caseres* to demand such a rigorous requirement. The relevant issue in *Caseres* was whether "the search of Caseres's car can be justified after the fact as a parole search." 533 F.3d at 1075. As noted above, the officer in that case encountered the defendant during a

routine traffic stop, arrested him after an altercation and a foot-chase, and searched his vehicle without suspicion. *Id.* at 1067–68. The government's central shortcoming was its failure to establish that the officer "was aware that Cal. Pen. Code § 3067 applied before he ordered the search of Caseres's car," as he did not know "when, and in what state, Caseres committed the crime for which he was paroled," or whether he had committed an offense within the ambit of the statute. *Id.* at 1076.[8] There is no such uncertainty here. Officer Trouette knew Estrella had been placed on California parole, was familiar with his criminal history,[9] spoke with him about his parole conditions, maintained contact with his parole officer, and learned of a recent parole violation. These facts are sufficient to bring this case outside the contemplation of *Caseres*.

As we are not constrained by our precedent, we decline to adopt the inflexible standard Estrella proposes, which would create practical problems for everyday police work. If the standard is "actual knowledge," with no latitude for uncertainty, officers must possess "up-to-the-minute

---

[8] Furthermore, the government argued that the search of Caseres' vehicle was either a search incident to arrest or an inventory search, and the district court ruled exclusively on that basis. *Id.* at 1074–75. The government did not invoke the parole search exception until appeal. *Id.* at 1070, 1075. In this important sense, any application of the parole search exception would have been retroactive. Comparatively, the encounter at issue in this case was justified, start to finish, as a parole detention and a parole search.

[9] Estrella does not appear to contend that Trouette did not know whether he had committed his crime before January 1, 1997. This is for good reason. Estrella's gang registration paperwork indicates that he had been arrested in 2015 and 2018 for the conviction that placed him on parole. Additionally, as Estrella was born in 1994, he would have been only about three years old by the time specified in Cal. Penal Code § 3067.

information" of a parolee's status before proceeding with a routine compliance check. *Cf. Douglas*, 193 Cal. Rptr. 3d at 89. It is easy to imagine a scenario where Trouette sees Estrella's name on a parole list and elects to search him *four days* later rather than *four months*—without double-checking police records, but with every reason to believe that he remains on parole. It is equally easy to conceive of a scenario where Trouette knows of the exact date Estrella's parole was scheduled to end—but Estrella's parole is terminated early, and Trouette conducts a compliance check the following day. Under Estrella's proposed standard, either scenario would be constitutionally infirm, and any imperfection in an officer's knowledge would be fatal. Such a result is incompatible with the Fourth Amendment, which calls for reasonable determinations, and does not demand certainty. *See Hill v. California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment."); *see, e.g.*, *Florida v. Harris*, 568 U.S. 237, 244 (2013); *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Florida v. Bostick*, 501 U.S. 429, 439 (1991); *Illinois v. Gates*, 462 U.S. 213, 232 (1983).[10]

---

[10] The Government responds to Estrella's argument in part by insisting that a person acting "with an awareness of the high probability of the existence of the fact in question" is functionally acting with knowledge. *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976). Although we decline to adopt Estrella's proposed standard, we reject this counterargument as an inaccurate construction of our precedent on the definition of "knowledge." As we have clarified, the "high probability of awareness" standard only applies "in situations where the evidence justifies an argument of willful blindness," and "has never been used in this circuit as a definition of actual knowledge." *United States v. Aguilar*, 80 F.3d 329, 332 (9th Cir. 1996).

\* \* \*

The Government suggests that we adopt the standard outlined in *People v. Douglas*, in which a California appellate court held that "[a]n officer 'knows' a subject is on [parole] if the officer's belief is objectively reasonable." 193 Cal. Rptr. 3d 79, 89–90 (Cal. Ct. App. 2015). In *Douglas*, an officer on patrol detained a probationer and searched his vehicle without probable cause, discovering a firearm that led to felon in possession charges. *Id.* at 82–83. The officer did not consult the police database to verify that the defendant was on probation before conducting the search. *Id.* However, he had arrested the defendant for weapon possession two years prior, and he recalled seeing the defendant's name on a list of probationers "within the preceding two months." *Id.* The trial court denied the defendant's motion to suppress, and the appellate court affirmed. *Id.* at 83–84. At the outset, the court rejected the argument that an officer must have "absolute certainty" predicated on "up-to-the-minute information" to possess "advance knowledge" of an applicable search condition. *Id.* at 89.[11] Instead, the court analogized state and federal Fourth

---

[11] *Douglas* dealt with a more stringent requirement than we address here. "Suspicionless searches are lawful in California for both probationers and parolees, so long as they are not conducted arbitrarily, capriciously, or for harassment." *Id.* at 85 (citing *People v. Bravo*, 738 P.2d 336, 342 (Cal. 1987)). However, while "a suspicionless search condition is imposed on all parolees by statute," courts "individualize the terms and conditions of probation to fit the offender." *Id.* at 87. Accordingly, a probation search requires a more granular degree of knowledge than a parole search: "[I]n the case of probation searches, the officer must have some knowledge not just of the fact someone is on probation, but of the existence of a search clause broad enough to justify the search at issue." *Id.* (citing *Bravo*, 738 P.3d at 338–41). As the government seeks to use

Amendment caselaw to hold that the officer's belief in the defendant's status need only be "objectively reasonable in the totality of the circumstances." *Id.* at 89–90. Given the officer's "knowledge of the law pertaining to firearms offenses . . . and the usual length of [probation]," corroborated by his familiarity with the defendant and recent confirmation of his probationer status, it was reasonable for him to believe that the defendant was still on probation. *Id.* at 93–94.

This framework is consistent with generally applicable Fourth Amendment principles. Generally, the predicate circumstances that justify a challenged search or seizure must be known to the officer at the time of the challenged encounter. *See Moreno*, 431 F.3d at 639, 641; *accord Scott v. United States*, 436 U.S. 128, 137 (1978) ("[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him."). Consequently, officers cannot manufacture probable cause or an exception to the warrant requirement based on facts that are discovered *during* or *after* a search. *Moreno*, 431 F.3d at 639, 641; *see, e.g., Job*, 871 F.3d at 859, 863 (officers found search waiver after conducting pat-down search); *United States v. Luckett*, 484 F.2d 89, 90–91 (9th Cir. 1973) (officer discovered outstanding traffic warrant after detaining defendant). Thus, in nearly every situation, officers must have "advance knowledge" of the circumstances that justify a search or seizure.

---

Estrella's parole status to justify the seizure, that additional granularity is unnecessary here.

However, the Fourth Amendment does not require perfection. As "the ultimate touchstone of the Fourth Amendment is reasonableness," reasonable mistakes of fact or law do not invalidate a search or seizure that would otherwise satisfy constitutional muster. *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) (quoting *Riley v. California*, 573 U.S. 373, 381 (2014)) (internal quotations omitted). Accordingly, an officer's reasonable belief that the predicate circumstances exist to conduct a search or seizure is often constitutionally sufficient. *See, e.g.*, *Heien*, 574 U.S. at 60–61, 66–68 (upholding traffic stop based on officer's reasonable but mistaken belief that the defendant's conduct was prohibited by state law); *Illinois v. Rodriguez*, 497 U.S. 177, 179–80, 189 (1990) (upholding consent search based on officer's reasonable but mistaken belief that the individual had authority to consent); *Hill v. California*, 401 U.S. 797, 802–05 (1971) (upholding arrest where officers mistakenly arrested individual matching suspect's description); *United States v. Sledge*, 650 F.2d 1075, 1077 (9th Cir. 1981) (upholding search of apartment based on officer's reasonable but mistaken belief that the premises had been abandoned). This flexible evaluation reflects the idea that the exclusionary rule is meant to deter police misconduct—not to penalize officers who act reasonably. *See United States v. Leon*, 468 U.S. 897, 916 (1984).

Nevertheless, although we concur with the principles articulated in *Douglas*, we conclude that probable cause is a more principled standard to apply. "Determining the reasonableness of a particular search involves balancing the degree to which the search intrudes upon an individual's privacy against the degree to which the search is needed to further legitimate governmental interests." *Ioane v. Hodges*, 939 F.3d 945, 953 (9th Cir. 2018); *accord Bell v. Wolfish*,

441 U.S. 520, 559 (1979) ("In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."). The statute at issue here confers broad discretion to detain and search parolees "at any time of the day or night, with or without a search warrant or with or without cause." Cal. Penal Code § 3067(b)(3). Applied to parolees, whose expectations of privacy are diminished, this provision is reasonable. However, the precondition at issue in this case safeguards the rights of third parties, who retain their privacy interests in full. Granting officers too much latitude to search individuals who are believed to be on parole would create a substantial risk that third parties are searched or seized based on faulty assumptions about their parole status, and without any suspicion of criminal activity. Unfettered discretion of that nature is precisely what the Fourth Amendment proscribes. *See Arizona v. Gant*, 556 U.S. 332, 345 (2009).

Probable cause is better calibrated to reduce the likelihood of such intrusions. "The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests." *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012). This framework has been developed through decades of caselaw and is familiar to law enforcement officers and judges across this circuit. The principled protections that it offers adequately balance "the individual's right to liberty and the State's duty to control crime," *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975), "safeguard[ing] citizens from rash and unreasonable interferences with privacy" while conferring commonsense flexibility to police officers, *Brinegar*, 338

U.S. at 176. Comparatively, the government's "objectively reasonable belief" standard is amorphous, and could be construed to require either "probable cause" or "reasonable suspicion." *See, e.g.*, *United States v. Gorman*, 314 F.3d 1105, 1110–15 (9th Cir. 2002) (discussing confusion created by the "reasonable belief" prerequisite for residential searches, and ultimately equating this standard to probable cause). Defining the requisite knowledge as probable cause ameliorates this confusion.

The probable cause threshold also accords with our caselaw defining the scope of a parole search. Before they may search property pursuant to a parole condition authorizing suspicionless searches, "officers must have a sufficient 'degree of knowledge' that the search condition applies to the place or object to be searched." *United States v. Dixon*, 984 F.3d 814, 821 (9th Cir. 2022) (quoting *United States v. Grandberry*, 730 F.3d 968, 974 (9th Cir. 2013)). Implementing this prerequisite, we have twice defined the necessary "degree of knowledge" to be probable cause. *See, e.g.*, *Dixon*, 984 F.3d at 822 (addressing searches of vehicles); *Grandberry*, 730 F.3d at 973 (addressing searches of homes).[12] These cases recognize that a probable cause requirement provides ample protection for the interests of third parties—and that a lesser standard would undermine their most essential Fourth Amendment rights. *Dixon*, 984 F.3d at 822 ("[A] reasonable suspicion standard runs the risk of officers conducting intrusive searches on vehicles that have no connection to the individual subject to the search

---

[12] Once they are inside a parolee's residence, officers "need only 'reasonable suspicion' that an item is owned, possessed, or controlled by the parolee." *United States v. Bolivar*, 670 F.3d 1091, 1095 (9th Cir. 2012).

condition."); *Grandberry*, 730 F.3d at 982 ("[R]equiring officers to have probable cause to believe that a parolee resides at a particular address prior to conducting a parole search protects the interest of third parties." (quoting *Motley*, 432 F.3d at 1080)). Here, too, the principled rules governing probable cause are better aligned to protect third parties against unjustified assumptions about their parole status.

Estrella counters that the public policy and privacy interests at stake compel a more rigid standard, and that anything short of actual knowledge is insufficient to justify the gravity of the intrusions authorized by this statute.[13] As Estrella notes:

> Officer Trouette's experience with the *general* length of parole cannot make up for his ignorance about Mr. Estrella's *particular* parole term. It is unreasonable for an officer to believe that every parole term is at least three years based on the usual term being three to four years. Otherwise, police officers could stop and search everyone released on parole for at least three years after release without ever checking the length of their parole.

However, this argument dilutes the record. Trouette did not merely assume that Estrella had an average parole term—he

---

[13] Estrella also notes that increased police discretion to perform stops of this nature could contribute to racial profiling. However, Estrella's framework does little to guard against this possibility. Even if officers were required to verify a parolee's status before conducting a routine compliance check, that discretion could be abused in the manner he describes.

spoke with Estrella personally, maintained communication with the defendant's parole officer, reviewed his parole conditions, and received information that he had violated his parole only four months prior. A suspicionless search or seizure based on broad generalizations about the defendant or his expected length of parole, with little to no particularized knowledge about the defendant's case, would almost certainly be unreasonable. But that would be a different case.

\* \* \*

Applying the foregoing principles, we hold that a law enforcement officer must have probable cause to believe that an individual is on active parole before conducting a suspicionless search or seizure pursuant to a parole condition. Consistent with our caselaw, and with general Fourth Amendment principles, the officer must possess advance knowledge of an applicable parole condition before they may detain or search a parolee. *Moreno*, 431 F.3d at 641. That knowledge must be particularized enough for the officer to be aware that a parole condition applies and authorizes the encounter. *Caseres*, 533 F.3d at 1076. However, the officer need not be absolutely certain, with ongoing day-by-day or minute-by-minute awareness of the subject's parole status. *Douglas*, 193 Cal. Rptr. 3d at 89–90.[14] Instead, it is sufficient for the officer to find, using the well-established rules governing probable cause, that the

---

[14] We further note that existing rules governing staleness of probable cause may be applied by analogy to determine exactly when it is unreasonable for an officer to proceed without updating their information. *Cf. United States v. Ped*, 943 F.3d 427, 432 (9th Cir. 2019) (applying staleness principles to determine whether officers had probable cause to search residence for parolee).

individual to be searched is on active parole, and an applicable parole condition authorizes the search or seizure at issue.

Applying this rubric, we hold that Trouette had probable cause to believe that Estrella was on active parole at the time of the encounter. As in *Douglas*, Trouette was familiar with Estrella: He met Estrella personally, reviewed his criminal history, discussed his parole conditions, and maintained contact with his parole officer. Although he did not know the precise start and end dates of Estrella's parole term, he knew that California parole ordinarily lasts three to four years. He also had good reason to believe that Estrella's term was not over: Estrella was released from prison in July 2018, about one year prior, and had violated a parole condition in April 2019, only four months prior. And distinct from *Caseres*, there was no uncertainty that Estrella was placed on California parole. Accordingly, Trouette had probable cause to believe that Estrella was subject to the statutory search condition imposed by Cal. Penal Code § 3067(b)(3), even without "up-to-the-minute" confirmation of his parole status. *Cf. Douglas*, 193 Cal. Rptr. 3d at 89.

## II. Prohibition on Arbitrary and Harassing Searches

In the alternative, Estrella argues that the entire encounter was arbitrary, as Trouette was motivated to train Cooley, rather than to perform legitimate police duties. A parole search may be unconstitutional if "the officers violated California's prohibition against arbitrary, capricious, or harassing searches." *Cervantes*, 859 F.3d at 1183; *accord Samson*, 547 U.S. at 856; *Ped*, 943 F.3d at 432. Under California law, a search constitutes harassment if it is "unrelated to rehabilitative, reformative or legitimate law enforcement purposes, or when the search is motivated by

personal animosity toward the parolee." *People v. Reyes*, 968 P.2d 445, 451 (Cal. 1998) (quoting *In re Anthony S*, 6 Cal. Rptr. 2d 214, 217 (1992)). This prohibition is decidedly narrow: "It is only when the motivation for the search is wholly arbitrary, when it is based merely on a whim or caprice or when there is no reasonable claim of a legitimate law enforcement purpose . . . that a search based on a probation search condition is unlawful." *People v. Cervantes*, 103 Cal. App. 4th 1404, 1408 (Cal. Ct. App. 2002), *as modified* (Dec. 23, 2002).[15]

Estrella argues that "Officer Trouette treated the interaction with Mr. Estrella as a 'training tool' for Officer Cooley," and that the officers had no legitimate reason to detain him.[16] Trouette was responsible for training Cooley as part of the LPD's field training program. Additionally, he attested that he perceived the stop as a training opportunity, and withheld information from Cooley to test the junior officer's resourcefulness. Estrella contends that this is not a

---

[15] For example, "a parole search could become constitutionally 'unreasonable' if made too often, or at an unreasonable hour, or if unreasonably prolonged or for other reasons establishing arbitrary or oppressive conduct by the searching officer." *Reyes*, 968 P.2d at 451 (quoting *People v. Clower*, 21 Cal. Rptr. 2d 38, 41 (Cal. Ct. App. 1998)).

[16] In making this argument, Estrella insists that "[t]he only legitimate law enforcement purposes" that justify a suspicionless parole search "are 'reducing recidivism' and 'promoting reintegration and positive citizenship,'" *Samson*, 547 U.S. at 854, and argues that officers "abuse their discretion" by acting outside these purposes. This argument conflates the policy rationale articulated in *Samson* with the Court's holding. Cal. Penal Code § 3067 authorizes suspicionless parole searches for any legitimate law enforcement purpose, provided that objective is not arbitrary, capricious, or harassing. *Samson*, 547 U.S. at 856. It is not limited to "reducing recidivism" and "promoting reintegration and positive citizenship," and we decline to constrain it in this manner.

legitimate purpose for a parole search, and that his search and seizure were arbitrary and capricious. *Cf. Cervantes*, 103 Cal. App. 4th at 1408 ("A search is a form of harassment when its motivation is a mere whim or caprice . . . e.g., an officer decides on a whim to stop the next red car he or she sees.").

We need not decide whether a stop undertaken solely to train a junior officer would be arbitrary or capricious, because the record does not support Estrella's claim that the officers searched and seized him exclusively as a training exercise. Rather, Trouette decided to conduct a parole compliance check and saw Estrella wearing an Oakland Athletics hat—a symbol of the Angelino Heights Sureños and a violation of Estrella's parole conditions. This is a wholly legitimate reason to conduct a parole or probation search under California law. *See, e.g.*, *People v. Woods*, 981 P.2d 1019, 1027–28 (Cal. 1999) (noting that probation searches may be conducted to "monitor the probationer"). It is true that Trouette brought Cooley into the field to train him in the fundamentals of police work, and it may be true that he saw the encounter with Estrella as an opportunity to provide such instruction. Regardless, these considerations do not vitiate Trouette's legitimate reason for initiating the encounter. The entire point of field training programs is to give new officers experience with police work through hands-on encounters in the field. That does not make them harassment.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the denial of Estrella's motion to suppress.